**Duane Terrell BURNS,
Plaintiff-Appellant,**

v.

**SOUTHERN PACIFIC TRANSPORTATION CO. et al., Defendants-Appellees.**

No. 76–1188.

United States Court of Appeals,
Ninth Circuit.

Sept. 7, 1978.

Certiorari Denied Jan. 8, 1979.
See 99 S.Ct. 843.

David Watkins (argued), Washington, D. C., for plaintiff-appellant.

Clarence M. Small, Jr. (argued), John A. Robertson (argued), Birmingham, Ala., for defendants-appellees.

Lutz Alexander Prager (argued), Washington, D. C., for Equal Employment Opportunity Commission, amicus curiae.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and LUCAS,* District Judge.

HUFSTEDLER, Circuit Judge:

Burns brought this Title VII action seeking to enjoin his employer, Southern Pacific Transportation Company ("Company") and the United Transportation Union and its local ("Union") from discharging him for his refusal to pay union dues and assessments in violation of his sincerely-held religious beliefs. The district court held that the Union and the Company had fulfilled their statutory duties of accommodation required by the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 2000e *et seq.*, particularly § 2000e(j) (1970 Supp. 2)) when they offered to relieve Burns of his obligation to belong to the Union and that no further accommodation was required because payment of the dues-equivalent to a charity worked an undue hardship upon the Union and its members by relieving Burns of paying his fair share of union expenses. The district court also rejected Burns' attack upon the constitutionality of the application to him of § 2, *Eleventh* of the Railway Labor Act, 45 U.S.C. § 152, *Eleventh* (1970). We reverse in part, holding that the Company and the Union failed to carry their burden of proving good faith efforts reasonably to accommodate Burns' religious beliefs and their further burden of proving that no accommodation reasonably could be

* Honorable Malcolm M. Lucas, United States District Judge, Central District of California, sitting by designation.

made without undue hardship to the Union or the Company. We affirm the district court's rejection of Burns' constitutional claim.

Burns has been employed by the Company since 1955; he is classified as a brakeman and conductor. For many years he has also been a member of the Seventh Day Adventist Church. He withdrew from the Union on February 26, 1974, when he became aware that his affiliation with the Union and his payment of dues to the Union were in direct conflict with the teachings of his Church. The district court found on ample evidence that Burns has a sincere religious belief in the teachings of his Church forbidding membership in labor organizations and contributions to such organizations. He requested an informal accommodation to his religious beliefs and asked to meet personally with representatives of the Union and the Company. He has offered to pay the equivalent of union dues and assessments to a designated charity and to offer proof to the Union of such charity payments. The Union and the Company were willing to waive any requirement of membership in the Union and participation in union activities, but both declined to consider any accommodation which would involve Burns' not paying union dues and assessments.

Upon refusal by the Union and the Company to consider any accommodation in respect of dues and in anticipation of his discharge, Burns filed charges of religious discrimination with the Equal Employment Opportunity Commission in Arizona. Thereafter, he obtained a right-to-sue letter, and he filed this complaint in the district court on March 1, 1974. The original complaint sought injunctive relief, attorney's fees, and damages. After the Company and the Union agreed that Burns could continue to work while the litigation was pending, the complaint was amended to seek only injunctive relief from discharge and attorney's fees. The case was tried by the court without a jury, resulting in judgment against him, and Burns appeals.

At all material times the Company and the Union have had in effect a Union security agreement requiring all employees, as a condition of employment, to be members in good standing of the Union. A companion agreement between the predecessor of the Union and the Company contained a provision which gives some relief to religious objectors by stating that an employee having religious scruples against joining a union "will . . . be deemed to have met the requirements of the Union Shop Agreement if he agrees to and does pay initiation fees, periodic dues and assessments of the organization representing his craft or class signatory hereto."

■ Burns fully met his burden of proving a *prima facie* case of religious discrimination in violation of Title VII. He proved that he had a bona fide belief that union membership and the payment of union dues were contrary to the teachings of his Church. He informed his employer and the Union about his religious views. He was thereafter threatened with discharge for his refusal to pay union dues and assessments. (*Anderson v. General Dynamics Convair Aerospace Division* (9th Cir. 1978) 589 F.2d 397.) Thereafter the burden was on the Company and the Union to prove that they made good faith efforts to accommodate Burns' religious beliefs, that the efforts were unsuccessful, and that they were unable reasonably to accommodate those beliefs without undue hardship. (42 U.S.C. § 2000e(j); *Anderson v. General Dynamics Convair Aerospace Division, supra.*)

■ We begin our analysis with *Trans World Airlines v. Hardison* (1977) 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113. The Court noted there that Congress did not define the degree of accommodation which is required of an employer under section 701(j) of the Civil Rights Act (432 U.S. at 73–76, 97 S.Ct. 2264), but that the legislative history is at least clear that "Congress intended to require some form of accommodation" and to change prior case law which had condoned an employer who "had not made any effort whatsoever to accommodate the employee's religious needs." (*Id.*

at 74, n.9, 97 S.Ct. at 2272.) Thus, the employer is required to take some steps in negotiating with the employee to reach a reasonable accommodation to the particular religious beliefs at issue. (*Anderson v. General Dynamics Convair Aerospace Division, supra,* 589 F.2d at 401; *McDaniel v. Essex International, Inc.* (6th Cir. 1978) 571 F.2d 338, 341–42.)

■ Once the employer has made more than a negligible effort to accommodate the employee (*Trans World Airlines v. Hardison, supra,* 432 U.S. at 77, 97 S.Ct. 2264) and that effort is viewed by the worker as inadequate, the question becomes whether the further accommodation requested would constitute "undue hardship." Once again, this term is not defined by the Civil Rights Act, but the burden of proving undue hardship rests upon the employer or union. The *Hardison* Court found that the employer had demonstrated undue hardship where the accommodation requested by the employee (a four-day work week) would have effectively required preferential treatment on the basis of religion for Sabbatarians, causing sacrifices or dislocation in the work schedules of fellow-workers or requiring the employer to hire outsiders to work Saturday shifts at "premium wages." (*Id.* at 81–84, 97 S.Ct. 2264.) The Court held that where the impacts upon co-workers or costs are greater than *de minimis,* undue hardship is demonstrated. (*Id.* at 84, 97 S.Ct. 2264.) We now apply the *Hardison* principles to the facts herein.

The Company and the Union made no effort to accommodate Burns' particular religious beliefs. In effect, they informed Burns that his only alternative was to accept the terms of the existing contract which freed him from the obligation of membership if he paid dues to the Union. Burns' religious beliefs, however, forbade payment of dues to the Union. Neither the Company nor the Union attempted to accommodate this belief. Their position therefore is that no accommodation is possible when an employee refuses to pay union dues and assessments because non-payment of such sums places an undue hardship on the Union as a matter of law or under proof offered in the case.

We rejected the contention that the substitution of payments to a charity for payment of union dues was an undue hardship as a matter of law in the companion case, *Anderson v. General Dynamics Convair Aerospace Division, supra.*[1] (*Accord McDaniel v. Essex International, Inc., supra,* 571 F.2d 338.) We therefore turn to the examination of the record to decide whether the Union and the Company proved as a matter of fact that substituted payments would create an undue hardship to the Union and the Company.

■ Appellees' hardship case was based in part upon opinions that "free rider" problems could cause serious dissension among employees, resulting in inefficiency of operation. These witnesses, however, did not attempt to relate a general sentiment against free riders either to Burns or to a person who, like Burns, made payments equivalent to union dues to a charitable organization. The Union and the Company also argued that, based on unofficial and unscientific polls, employee dissatisfaction with persons who were free riders or who received different treatment of any kind was not hypothetical. We are not persuaded. We agree with the Sixth Circuit, speaking in *Draper v. U. S. Pipe & Foundry Co.* (6th Cir. 1976) 527 F.2d 515, 520:

> "We are somewhat skeptical of hypothetical hardships that an employer thinks might be caused by an accommodation that has never been put into practice. The employer is on stronger ground when he has attempted various methods of accommodation and can point to hardships that actually resulted."

1. No difference in result can be based upon the fact that the Union security agreement considered in *Anderson* responded to § 8(a)(3), (b)(2) of the Taft-Hartley Act, 29 U.S.C. § 158(a)(3), (b)(2) (1970) and that the Union security provisions in this case were authorized under the similar provisions of Section 2, *Eleventh* of the Railway Labor Act, 45 U.S.C. § 152. (*McDaniel v. Essex Internat'l, Inc.* (6th Cir. 1978) 571 F.2d 338.)

As we noted in *Anderson v. General Dynamics Convair Aerospace Division, supra,* undue hardship requires more than proof of some fellow-worker's grumbling or unhappiness with a particular accommodation to a religious belief. (589 F.2d at 402.) An employer or union would have to show, as in *Hardison,* actual imposition on co-workers or disruption of the work routine.

■ The Union also contends that it would suffer substantial financial hardship if Burns were permitted to pay the equivalent of union dues and assessments to a charitable fund because the costs of collective bargaining would be disproportionately borne by union members and because the administrative costs in keeping track of Burns' charitable contributions would be more than *de minimis.* Excusing Burns from paying his dues to the Union would deprive the Union of $19 per month. The allocation of dues payments was: $7 to the Local, distributed half for salaries and expenses and the other half to the Local's Committee of Adjustment; $5 to the International Union; $4 to the Union's General Committee of Adjustment; and $3 to the State Legislative Board. There was testimony from one of the Union officers that the loss of Burns' $19 per month dues "wouldn't affect us at all." In our view, the loss of dues to the Union is *de minimis,* even if so necessary to its fiscal well-being that its equivalent would be collected from the Local's 300 members at a rate of 2 cents each per month. The district court did not decide to the contrary as in *Hardison.* (*See* 432 U.S. at 84, n.15, 97 S.Ct. 2264.) Rather, the district court accepted the Union's contention that accommodating Burns would open the gate to excusing vast numbers of persons who claimed to share Burns' beliefs, thence resulting in a greater than *de minimis* burden on the Union and Union members. The record does not support this speculation. The evidence was that only three persons subject to the Local's jurisdiction were Seventh Day Adventists.[2] If, in the future, the expressed fear of widespread refusal to pay union dues on religious grounds should become a reality, undue hardship could be proved.[3] But on the present record, no substance was given to these apprehensions. (*See McDaniel v. Essex International, Inc., supra,* 571 F.2d at 343–44.)

■ We quickly dismiss the contention that administrative difficulties in accommodating Burns' religious beliefs would cause undue hardship. No evidence was presented on this point, other than testimony that keeping track of Burns' charitable contributions would entail some bookkeeping. No one testified concerning the cost of the minor modifications which would be thereby required, and we cannot say that the modest amount of paper work would impose even *de minimis* cost.

■ The district court correctly rejected Burns' constitutional challenge to section 2, *Eleventh* of the Railway Labor Act. As Burns necessarily concedes, the constitutional issue has been repeatedly resolved against him. (*E. g., Yott v. North American Rockwell Corp.* (9th Cir. 1974) 501 F.2d 398, 403–04.)

For the first time on appeal, the Company has challenged the constitutionality of § 701(j) of the Civil Rights Act, as amended, on the ground that it violates the establish-

---

2. The concern that quantities of religious objectors would deplete the financial resources of the Union is not shared by George Meany, President of the AFL–CIO. A letter from George Meany was introduced into evidence in which Mr. Meany expressed his opinion that religious views such as those of Burns should be accommodated to respect individual religious reservations in the administration of union security agreements and suggesting that an appropriate method for accommodation would be the payment of the equivalent of dues to a union charitable fund or to an agreed upon charity.

3. *See Trans World Airlines v. Hardison, supra,* 432 U.S. at 31, 97 S.Ct. 2264 (it would be anomalous to conclude that reasonable accommodation requires actions depriving other employees of their rights); *see also id.* at 90 (Marshall, J., dissenting) ("important constitutional questions would be posed by interpreting the law to compel employers (or fellow employees) to incur substantial costs to aid the religious observer.").

ment clause of the First Amendment. We decline to reach the constitutional question under these circumstances. If the Company is so inclined, it can raise the constitutional question in the district court following remand.

Burns is entitled to a reasonable attorney's fee as a part of his costs, pursuant to 42 U.S.C. § 2000e–5(k), the amount of which shall be fixed by the district court on remand.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with the views herein expressed.