**James E. CROSS, Plaintiff,**

v.

**Benjamin BAILAR, Postmaster General, Defendant.**

**Civ. No. 76–1076–E.**

United States District Court,
D. Oregon.

Oct. 15, 1979.

Edward P. Heid, Kulongoski, Heid, Durham & Drummonds, Eugene, Or., for plaintiff.

Sidney I. Lezak, U.S. Atty., Judith D. Kobbering, Asst. U.S. Atty., Portland, Or., for defendant.

SKOPIL, Chief Judge:

James Cross seeks a judgment declaring that the defendant violated Section 717(a) of Title VII of the Civil Rights Act of 1964 (as amended, 42 U.S.C. § 2000e, *et seq.*) by discriminating against him on the basis of his religion. He also requests damages authorized by Section 706 of that title. Jurisdiction is properly based on 42 U.S.C. § 2000e and 28 U.S.C. § 1343. The plaintiff has exhausted his administrative remedies. I find for the defendant.

I have considered evidence in a number of forms. The EEO administrative record has been fully considered, along with the transcript of the administrative hearing. The parties submitted narrative statements as direct testimony, as to which there was cross-examination. Exhibits were introduced at trial. Because this is a bench trial I have applied a liberal standard of admissibility. To clarify the record, all outstanding objections are overruled.

## FACTS

The plaintiff, James Cross, has been employed by the defendant in various capacities since June 19, 1971. Until July 1974 the plaintiff worked weekends when required. He then joined the Seventh Day Adventist Church. The church celebrates the sabbath from sundown on Fridays to sundown on Saturdays.

The plaintiff informed the defendant of this and requested an accommodation. Mr. Boydston, a post office distribution manager, went to considerable lengths to secure a complete accommodation of the plaintiff's religious beliefs. An accommodation required the union's approval since the position would have "split" (unconsecutive) days off, contrary to the collective bargaining agreement. Art. III, § 2c. Split days off had been the subject of what Mr. Boydston characterized as "a very bitter exchange" with the union just before the plaintiff's request. Tr. 105. Mr. Boydston nevertheless presented the plaintiff's request to the union. The union agreed to create a special position, Job No. 124, on a one-time basis, that would accommodate the

plaintiff. The agreement was conditioned on the requirement that all employees be able to bid for the position on the basis of seniority. The plaintiff was the successful bidder.

In August 1974, one month later, the plaintiff decided to return to school for an accounting degree. He gave up Job No. 124, against the advice of his supervisor, and bid on a twenty hour per week position to allow time for school.

On October 29, 1974 the plaintiff delivered a letter to the defendant's personnel manager, Mr. Smith, saying that he would like to be appointed to the first available "part-time flexible" (PTF) position.[1] The plaintiff had found that he was unable to earn enough money at his twenty hour per week job. Because the Eugene post office is considered undermanned, a PTF employee can feel assured of working at least forty hours per week. The plaintiff's letter to Mr. Smith included the following:

"Just as a reminder, please remember that as a Seventh Day Adventist I need to have from fri. sundown to sat. sundown off." [sic]

Mr. Smith apparently relayed the request to the Eugene Postmaster, Mr. Newman. Mr. Newman discussed it with Mr. Boydston. Mr. Boydston testified that he told Mr. Newman:

"I can accommodate him . . . but with the things I must look at on the floor is the mail scheduling, the emergencies that come by. I cannot guarantee him off." Tr. 101.

The first PTF positions became available in March 1975. The plaintiff discussed the position with Mr. Newman. Little evidence was offered regarding this conversation. It was clear, however, that Mr. Newman was unwilling to guarantee plaintiff's sabbath off. Tr. 7. It was left to the plaintiff to attempt to negotiate with individual supervisors. While there was no evidence on his discussion with the supervisors, the plaintiff was apparently unable to obtain suitable assurances. PTF positions were offered to people who were less qualified and had less seniority than the plaintiff. PTO, Uncontested Fact No. 10, Agreed Fact No. 4. The plaintiff filed an administrative claim of discrimination on May 11, 1975.

The plaintiff renewed his request to be transferred to a PTF position. On August 12, 1975 Mr. Newman offered a position to the plaintiff, but with no guarantee of his sabbath off. The plaintiff declined the position. The exchange between the plaintiff and Mr. Newman is amply documented in correspondence.

On June 19, 1976 the plaintiff accepted a PTF position. Since then the defendant has accommodated the plaintiff's sabbath.

## LAW

In 1972 Congress amended the 1964 Civil Rights Act to require that "[a]ll personnel actions affecting employees or applicants for employment . . . in the United States Postal Service . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 86 Stat. 111, 42 U.S.C. § 2000e–16. Religion is defined as "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

The plaintiff's *prima facie* burden is to establish (a) his bona fide religious belief that he could not work during his sabbath, (b) that he informed the defendant of this belief, and (c) that he was not hired because of his unwillingness to work on his sabbath. Accord, *Anderson v. General Dynamics*, 589 F.2d 397 (9th Cir. 1978); *Burns v. Southern Pac. Transp. Co.*, 589 F.2d 403 (9th Cir. 1978). The plaintiff is not required to show as part of his *prima facie* case that he made efforts to compromise his religious beliefs to accommodate the defendant. *Anderson v. Gen. Dynamics*, supra, 589 F.2d at 401, n. 3. Once the employee has established a *prima facie* case, the burden shifts to the employer to prove that it made good faith

---

1. A PTF employee is called in whenever a regular employee, for whatever reason, is unable to work. See Collective Bargaining Agreement Art. VII, § 1. On holidays PTF employees must be called in before any regular employee. Id., Art. XI, § 6.

efforts to accommodate the employee's religious beliefs. If those efforts were unsuccessful, the employer must demonstrate that it was unable to accommodate the employee's beliefs without undue hardship. Id., at 402; *Burns v. Southern Pacific Transportation Co.*, 589 F.2d 403 (9th Cir. 1978). See *Johnson v. U.S. Postal Service*, 364 F.Supp. 37 (N.D.Fla.1973), affirmed 497 F.2d 128 (5th Cir. 1974).

The standards governing "reasonable" accommodation and "undue" hardship are not provided by the statute. To a great extent they can be determined only within the context of the facts of each case. *U.S. v. City of Albuquerque*, 545 F.2d 110 (10th Cir. 1976). See Note, "Accommodation of an Employee's Religious Practices Under Title VII", 1976 *U. Ill. L. For.* 867, 889.

■ The cases are clear that the employer must take the first step toward accommodation. *Anderson v. General Dynamics*, supra; *Burns v. Southern Pacific*, supra. But once the employer takes the first step, the employee has some reciprocal obligation:

"An employee cannot shirk his duties to try to accommodate himself or to cooperate with his employer in reaching an accommodation by a mere recalcitrant citation of religious precepts. Nor can he thereby shift all responsibility for accommodation to his employer. Where an employee refuses to attempt to accommodate his own beliefs or to cooperate with his employer's attempt to reach a reasonable accommodation, he may render an accommodation impossible." *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1285 (8th Cir. 1977). See also *Yott v. North American Rockwell Corp.*, 602 F.2d 904 (9th Cir. 1979); *U.S. v. City of Albuquerque*, 545 F.2d 110 (10th Cir. 1976); *Jordan v. North Carolina National Bank*, 565 F.2d 72 (4th Cir. 1977).

## PRIMA FACIE CASE

There is no issue as to the plaintiff's *prima facie* case. His belief was sincere, it conflicted with a condition of PTF employment, and the plaintiff was not hired be-

cause of it. Nor is there a genuine question that the defendant failed to hire the plaintiff because he was unwilling to work on his sabbath. I therefore hold that the plaintiff has made out a *prima facie* case of employment discrimination.

## THE DEFENDANT'S EFFORTS TO ACCOMMODATE

I must next decide whether the defendant has proved (a) that it made a good faith effort to accommodate the plaintiff's religious beliefs, and (b) since those efforts were unsuccessful, than an accommodation would have imposed an undue hardship on the defendant's business. *Anderson v. General Dynamics* supra, 589 F.2d 397; *Burns v. So. Pac. Transp. Co.*, supra, 589 F.2d 403; *Redmond v. GAF Corp.*, 574 F.2d 897 (7th Cir. 1978).

■ The defendant was unwilling to make the complete accommodation the plaintiff requested. Nevertheless, this does not show an absence of good faith. To begin with, the earlier effort to secure Job No. 124 must be borne in mind. The defendant's efforts there were considerable. The plaintiff abandoned Job No. 124 after one month. When in October the plaintiff requested a PTF position with basically the same accommodation, the defendant understandably did not bend over backwards in the way it had in July. Nevertheless, the defendant made it clear that it was willing to consider a lesser accommodation. In the plaintiff's words:

"Mr. Newman told Mr. Cross that he could order his supervisors to guarantee Mr. Cross his sabbath off but did not want to tie the hands of his supervisors, therefore, it would be up to Mr. Cross to work it out with the supervisors in question."

The parties agree that the plaintiff would have been given the PTF job in March 1975 if the plaintiff would have accepted it without a guarantee that he could take sabbaths off. PTO, Agreed Fact # 4. Mr. Boydston's testimony showed that he was willing to accommodate the plaintiff when possible.

This, in the context of the efforts surrounding Job No. 124, is sufficient to show the defendant's good faith.

The plaintiff's unwillingness to consider accommodations short of a guarantee makes it unnecessary to consider whether the defendant should have explored other alternatives. The plaintiff repeatedly stated that he required a guarantee. For example, in April 1975 to a post office EEO specialist, Mr. Morris, the plaintiff said:

"In March, 1975, I was offered a part-time flexible position, but I was told that if I accepted this position, I would not be guaranteed Saturday off. I then reminded the management of the fact that I was a member of the Seventh Day Adventist Church and thereby would not accept a position on those terms."

The plaintiff maintains that his request for a guarantee was misinterpreted. He testified that he thought the defendant was asking him to guarantee his presence on the sabbath and that he should never ask to have a sabbath off. He said that he was not asking to be guaranteed all sabbaths off, but only that he not be required to guarantee that he would never ask for a sabbath off. Yet he also testified that he would not actually work on his sabbath even if he was scheduled to work. In this respect his testimony seemed inconsistent.

At any rate, in normal English usage the plaintiff's words would be interpreted as a request for a guarantee. The defendant cannot be faulted for failing to understand what the plaintiff did not say comprehensibly.

The only remaining question is whether the defendant could have guaranteed the plaintiff's sabbath off without undue hardship.

At trial the plaintiff proposed that he could be available for just as many hours per week even with his sabbath off. He suggested that he could have worked through Tour II on Fridays, resume work on Tour III on Saturdays, and work additional tours on Sundays.[2] He suggested that under this schedule the defendant would not have suffered undue hardship.

By definition the PTF position the plaintiff sought required flexible working hours. Only a limited degree of predictability was possible. PTF workers are scheduled in advance, and their schedules can remain fixed over limited periods of time. Yet the need for and scheduling of PTF employees are ultimately determined by volume of mail. Volume of mail is predictable only to a degree. Variations inevitably occur. Compensating for those variations is the purpose of the PTF classification. This overriding need for flexibility in PTF employees is a relevant factor in determining whether an accommodation would result in undue hardship. Cf. *Johnson v. Postal Service*, 497 F.2d 128 (5th Cir. 1974).

As a general matter, mail volume is heavy on Thursdays, Fridays, and Saturdays. The need for PTF employees is greatest during Tours I and III on those days, and particularly Tour I on Saturday mornings. If the plaintiff's request for a guarantee were granted, he would be unavailable during at least two shifts of peak mail volume, including one shift where demand for PTF employees was highest. Further, the plaintiff's availability during this peak demand period would necessarily shift with the seasons. During the depths of winter he would have to stop work on Friday and begin on Saturday at 4 p. m. During the height of summer, sundown could come at 9 p. m. or later.

The plaintiff's skills were also a factor in scheduling his work hours. He was trained to operate the defendant's letter-sorting machine (LSM). The LSM is a high-speed sorter that operated with an eighteen-person crew. Many PTFs are not trained to operate the LSM. Normally the machine is operated during Tours I and III. The machine is not operated at all on Sundays or on Tour I beginning Saturday night. The

---

**2.** Tour I runs from approximately 12 midnight to 8 a. m.; Tour II is from 8 a. m. to 4 p. m.; Tour III is from 4 p. m. to 12 midnight. These times are approximate because starting times can vary by as much as four hours for each tour.

plaintiff's proposal would therefore require the defendant to replace this skill during peak demand periods. The defendant's ability to replace the plaintiff is constrained by several factors. The defendant cannot ask a PTF employee to work two shifts in a row. There must be an eight-hour break between shifts. If a PTF employee with LSM ability is not available, a regular employee must be called. Any regular employee who works outside his regular bid schedule must be paid overtime; and once the regular employee is called, he must be guaranteed eight hours of work. He cannot be sent home with less than eight hours of pay. Collective Bargaining Agreement, Art. VIII, § 8.

The plaintiff's proposal would also entail additional expense. Under any circumstances the plaintiff's suggested Tour III work on Saturday night would run into Sunday. Under the collective bargaining agreement this would require the defendant to pay the plaintiff an additional 25 percent increment for the entire eight-hour shift. Art. VIII, § 6. Further, because most of this time would fall between 6 p. m. and 6 a. m. a ten percent night differential would be required. Art. VIII, § 7. While this extra cost may be *de minimus*, it is a factor to consider in determining the overall cost of accommodating the plaintiff.

Finally, the accommodation the plaintiff proposes would be only a temporary solution. Under the collective bargaining agreement the proposed schedule could only last for six months. After that time the position would be converted to a full-time position, open to bids on the basis of seniority. The plaintiff would not have been able to bid for the position. Tr. 107. It is proper to consider the transience of an accommodation in determining whether it is reasonable. *Yott v. North American Rockwell*, supra at 909.

In hindsight it is possible to say that there would have been few instances of direct conflict between the defendant's needs and the plaintiff's sabbath. But the defendant did not have the benefit of hindsight. It was asked to guarantee the plaintiff's schedule prospectively. Bearing in mind the flow of mail, times of peak demand, the plaintiff's skills, and the constraints imposed by the collective bargaining agreement, Mr. Boydston's conclusion seems most reasonable:

"I can accommodate him . . . but with the things I must look at on the floor is the mail scheduling, the emergencies that come by. I cannot guarantee him off. . . . I would have tried very hard to accommodate him; it might have worked out." Tr. 101.

I conclude that it would have been an undue hardship to the defendant's business to guarantee the plaintiff's sabbath off. In making this determination no one of the factors I have discussed is decisive in itself. But all of these factors taken together show undue hardship.

The fact that the defendant was able to make the requested guarantee in 1976 does not alter my conclusion. By 1976 the defendant had additional employees. More PTF employees and more regular employees were available to meet fluctuations in mail flow. There were more who were trained to operate the LSM. Under those changed circumstances the defendant met the plaintiff's request. Whether or not the defendant was legally required to do so, I am satisfied that circumstances were materially different during the period that is relevant to this action.

Judgment should be entered in favor of the defendant.

This opinion constitutes findings of fact and conclusions of law in accordance with rule 52(a), Fed.R.Civ.P.