**Corine PROCTOR, Plaintiff-Appellant,**

v.

**CONSOLIDATED FREIGHTWAYS COR-PORATION OF DELAWARE, a Delaware corporation, Defendant-Appellee.**

**No. 84–4323.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1986.

Decided Aug. 1, 1986.

Stephen Brischetto, Baldwin & Brischetto, Portland, Or., for plaintiff-appellant.

James H. Clarke, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or., for defendant-appellee.

Before ALARCON, REINHARDT, and THOMPSON, Circuit Judges.

ALARCON, Circuit Judge:

Corine Proctor (hereinafter Proctor) appeals from the district court's order granting summary judgment in favor of Consol-idated Freightways Corporation (hereinafter Consolidated) on her Title VII complaint alleging employment discrimination based on religion. We reverse and remand because Proctor has established that a triable issue of material fact exists concerning whether Consolidated complied with its statutory obligation to initiate a good faith attempt to accommodate Proctor's religious beliefs prior to terminating her. Proctor's request for an award of attorney's fees on appeal pursuant to 42 U.S.C. § 2000e–5(k) is denied without prejudice because she is not a "prevailing party" within the meaning of that statute.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Proctor commenced employment with Consolidated in January of 1968 as a payroll clerk. In 1974, she was promoted to a "balancing clerk," a position in which she continued for 4 to 5 months. Proctor worked Saturday overtime when necessary as a balancing clerk. She was "bumped" from this position by a senior employee due to a reduction in workforce. Proctor then assumed the position of "data input clerk," a lower-paid position, where she worked until May, 1981.

Proctor became a member of the Seventh-Day Adventist Church on June 11, 1977. The Seventh-Day Adventist Church teaches its members to observe the Sabbath from sundown Friday to sundown Saturday. The Church prohibits its members from engaging in work activities on the Sabbath.

In her position as a data input clerk, Proctor was required to work overtime occasionally on Saturdays. On December 12, 1977, Consolidated passed around a "buck slip" (a note containing the names of employees who were to work on Saturdays) indicating that the data input clerks would be required to work on Saturday. Proctor responded by giving Consolidated a letter advising it of her religious beliefs and the fact that they precluded her from working on Saturday.

When Proctor did not show up for work on Saturday, December 17, 1977, she was placed on a five-day suspension. Proctor filed a grievance with the Joint Grievance Committee, which ruled against her because she had not given timely notice that she would not be reporting to work on that Saturday. John Grieve, Manager of Labor Relations for Consolidated, subsequently instructed Proctor's supervisors to accommodate her religious beliefs and not to require her to work overtime as a data input clerk. Consolidated successfully accommodated Proctor during the remaining three years in which she held the data input clerk position, by substituting others of the 17 full-time and part-time data input clerks, when Saturday work was required.

In late July, 1979, Proctor bid on two positions which required Saturday overtime work. Proctor refused to agree to work on Saturdays, and her bids were rejected. Proctor filed a grievance which she later withdrew. She subsequently filed charges of religious discrimination with the Oregon Bureau of Labor and Industries. The Bureau of Labor and Industries ruled that the charges were unfounded.

On May 7, 1981, Proctor bid for a balancing clerk position. She was asked to sign a statement acknowledging that she might be required to work Saturdays if she accepted the balancing clerk position. She refused to sign the statement. Consolidated nevertheless awarded her the position, and she accepted.

Proctor began working as a balancing clerk on May 18, 1981. On May 28, 1981, Majel Olson, Proctor's supervisor, circulated a buck slip indicating that overtime work would be required on Saturday, May 30. Proctor indicated on the slip that she would not work on Saturday because it was her Sabbath. Consolidated requested volunteers to work overtime during that week, and was successful in avoiding Saturday overtime for all balancing clerks. The same sequence of events occurred during the week of September 12, 1981. Again, Consolidated avoided Saturday overtime

for balancing clerks by securing volunteers to work overtime during the week.

On September 16, 1981, Olson circulated a buck slip indicating that Proctor was to work on Saturday, September 19. Proctor again made a notation on the slip that she could not work on the Sabbath. On September 17, Olson read a statement to Proctor informing her that she would be disciplined if she failed to present herself for work on the following Saturday. Proctor did not show up for work on the 19th, and she was suspended without pay for three days as a result.

Proctor returned to work as scheduled on September 24, 1981. On that date, Olson circulated a buck slip scheduling work for Saturday, September 26, 1981. Proctor again made a notation on the slip indicating her inability to work on that day. Proctor did not report for work on September 26, and Consolidated terminated her two days later.

Proctor filed grievances on both the suspension and the discharge. The arbitrator denied her grievances, finding that Proctor "caused her own problem by bidding off her job onto a job which required Saturday overtime work," and that Consolidated had no additional duty to accommodate Proctor in her new position. On February 4, 1982, Proctor filed an employment discrimination charge with the Equal Employment Opportunity Commission (EEOC). On January 4, 1983, the EEOC found reasonable cause to believe that the discrimination charge was true. When conciliation proved unavailing, the EEOC issued a notice of right to sue.

Proctor filed a timely complaint in district court for violation of Title VII. The court granted summary judgment for Consolidated, apparently relying upon the magistrate's Findings and Recommendation. The magistrate found that Consolidated had a duty to make a reasonable accommodation of Proctor's religious beliefs even after Proctor became a balancing clerk; nevertheless, he concluded that Consolidated had made an adequate showing that accommodation could not be accomplished without undue hardship for Consolidated,

and that no triable issues of material fact remained.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo*, in the light most favorable to the nonmoving party, to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986).

## III. FAILURE TO INITIATE GOOD FAITH EFFORTS TO ACCOMMODATE PROCTOR'S RELIGIOUS BELIEFS

Title 42 of the United States Code, section 2000e–2(a)(1) prohibits an employer from failing to hire, refusing to hire, or discharging any individual because of her religion. The term "religion" is defined as follows:

> The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j).

■ To establish a *prima facie* case of religious discrimination under §§ 2000e–2(a)(1) and (j), the plaintiff has the burden of pleading and proving that (1) she had a bona fide religious belief; (2) she informed her employer of her religious views and that they were in conflict with her responsibilities as an employee; and (3) she was discharged because of her observance of that belief. *Anderson v. General Dynamics Convair Aerospace Division*, 589 F.2d 397, 401 (9th Cir.1978), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). The plaintiff is not required to show as part of her *prima facie* case that she made efforts to compromise her religious beliefs before seeking an accommodation from her employer. *Id.* at n. 3.

There is no dispute in the instant case that Proctor established a *prima facie* case of discrimination. She showed that (1) she had a bona fide belief that working on Saturday was contrary to her religious faith; (2) she informed Consolidated of her religious views and their conflict with working overtime scheduled on Saturdays; and (3) she was discharged for her failure to show up for work on Saturday.

■ Once the employee has established a *prima facie* case, the burden shifts to the employer to prove that it made good faith efforts to accommodate the employee's religious beliefs. *Anderson*, 589 F.2d at 401. The burden to undertake initial steps toward accommodation rests upon the employer, not the employee. *Id.* In *Burns v. Southern Pacific Transportation Co.*, 589 F.2d 403 (9th Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979), the companion case to *Anderson*, we noted that Title VII was designed to change prior case law condoning the failure of an employer to make any effort to accommodate its employee's religious beliefs. *Id.* at 405. We concluded: "Thus, the employer is required to take some steps in negotiating with the employee to reach a reasonable accommodation to the particular religious beliefs at issue." *Id.* at 406; *accord American Postal Workers Union v. Postmaster General*, 781 F.2d 772, 776 (9th Cir.1986) (per curiam) (in *Burns* this court recognized that "it is incumbent upon the employer to undertake some initial steps to reach a reasonable accommodation of the particular religious belief at issue...."). If the employer's efforts prove unsuccessful, the employer must also demonstrate that it was unable reasonably to accommodate the employee's belief without undue hardship. *Id.*[1]

---

**1.** Because we conclude that a triable question of fact remains concerning whether Consolidated undertook the good faith efforts required by the statute, we do not reach the question which the district court found dispositive: whether Consolidated has established that the efforts were unsuccessful because it was unable to accom-

Proctor contends that summary judgment was inappropriate because Consolidated failed to establish that it initiated good faith efforts to accommodate her religious beliefs as required by Title VII. While Proctor admits that Consolidated made successful efforts to accommodate her in her position as a data input clerk, she argues that a genuine issue of fact remains concerning whether Consolidated made good faith efforts to accommodate her in her subsequent position as a balancing clerk. Consolidated argues that efforts it made to accommodate Proctor in her position as a data input clerk are relevant to establishing its good faith efforts to accommodate her in her subsequent position. Additionally, Consolidated maintains that it made successful good faith efforts to accommodate Proctor's beliefs after she became a balancing clerk on two occasions: the week of May 30 and the week of September 12, when it secured volunteer overtime work during the week, thereby avoiding Saturday overtime work for all balancing clerks. Consolidated asserts that it made similar efforts for the weeks of September 19, 1981 and September 26, 1981, which proved unsuccessful.

█ As a threshold matter, it is clear that Consolidated had an obligation to initiate good faith efforts to accommodate Proctor's religious beliefs after she assumed her new position as a balancing clerk. Section 2000e–2(a)(1) makes it an unfair labor practice to refuse to hire an individual because of her religion. A refusal to hire Proctor because she was unable to work on Saturdays would have been a violation of Title VII, in the absence of good faith efforts to accommodate her religious beliefs. The fact that Proctor applied for a position which she knew required Saturday work thus does not exempt Consolidated from its statutory duty to initiate a good faith effort to accommodate her in that position. *See Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 77, 97 S.Ct. 2264, 2273, 53 L.Ed.2d 113 (1977) (detailing TWA's efforts to accommodate Proctor's beliefs without undue hardship.

an employee's beliefs in a new position even where the employer successfully accommodated the employee's beliefs in a prior position).

Proctor does not dispute the fact that on four occasions while she served as a balancing clerk, Consolidated made attempts to secure volunteer overtime work during the week in an effort to avoid Saturday overtime for balancing clerks. Instead, she disputes Consolidated's motive in doing so; she argues that these actions do not amount to good faith efforts to accommodate her beliefs. She supports her allegation with citation to her affidavit, submitted in support of her opposition to the motion for summary judgment, in which she states: "At the arbitration hearing, John Grieve and Majel Olson testified that Consolidated Freightways did not have to accommodate me at grade 3 [balancing clerk position] because they were accommodating me at grade 2 [data input clerk position]." She also states in her affidavit that Ken Kowalski of Consolidated told her that "the company would not make any effort to accommodate [her] at grade 3 because they were accommodating [her] at grade 2."

The issue in this case is whether, after Proctor assumed her position as balancing clerk, Consolidated carried its burden of proving that it initiated good faith efforts to accommodate Proctor's religious beliefs. Whether an employer has met its statutory burden to initiate a good faith effort to accommodate an employee's beliefs is a question of fact. *See Hardison,* 432 U.S. at 77, 97 S.Ct. at 2273 (" 'TWA established as a matter of fact that it did take appropriate action to accommodate as required by Title VII' ") (quoting from district court opinion, 375 F.Supp. 877, 890 (W.D.Mo. 1974)); *see also Nicholson v. Board of Education,* 682 F.2d 858, 864 (9th Cir.1982) (decision as to an employer's true motivation in deciding not to rehire an employee is reserved to trier of fact).

Proctor has raised a triable issue of fact regarding whether Consolidated initiated good faith efforts to accommodate her in her position as a Grade 3 balancing clerk. Consolidated asserts that it made attempts to schedule overtime during the week in order to obviate the need for *any* Saturday overtime for balancing clerks, and that it arranged for substitute workers on two occasions when it was possible to get volunteers to fill in for Proctor. Proctor's testimony that her supervisors testified that they believed that they were under no obligation to accommodate her in her position as a balancing clerk, however, in combination with Kowalski's statement that Consolidated would not make any effort to accommodate her in her new position, places into issue Consolidated's motive in scheduling overtime during the weeks of May 30, 1981, September 12, 1981, September 19, 1981, and September 26, 1981, and the sincerity of its efforts to accommodate Proctor's religious beliefs.

■ Consolidated cites *Cross v. Bailar,* 477 F.Supp. 748, 751 (D.Or.1979) for the proposition that an employer's efforts to accommodate an employee in a previous position are relevant in establishing that the employer has made a good faith effort to accommodate the employee in the new position. *Cross* does not eliminate the issue of fact raised by Proctor's testimony. In *Cross,* the employer had successfully accommodated Cross in a previous position and made an attempt to accommodate him in a new position. *Id.* The court stated that "[t]he cases are clear that the employer must take the first step toward accommodation," and held that the employer's efforts to accommodate Cross in his new position, while not the complete accommodation requested by Cross, were sufficient. *Id.* The court noted that, in light of the employer's considerable efforts to accommodate Cross in his previous position, the employer's unwillingness to make the *complete* accommodation requested in the new position did not show an absence of good faith. *Id.* By contrast, the issue in the instant case is whether Consolidated's acts amounted to a good faith effort to accom-

modate Proctor in her new position. Efforts at reasonable accommodation in a previous position may constitute admissible evidence with respect to the employer's motives or bona fides, but such *prior* efforts do not constitute compliance, in whole or in part, with the employer's obligations to take steps toward accommodation with respect to the new position.

Moreover, the instant appeal arises from a summary judgment award, while the *Cross* opinion was rendered after a bench trial. 477 F.Supp. at 749. At the summary judgment stage, the district court must view all evidence and factual inferences in the light most favorable to the party opposing the motion. *Ramirez v. National Distillers & Chemical Corp.,* 586 F.2d 1315, 1318 (9th Cir.1978). "In ruling on a motion for summary judgment, it is not the function of the court to resolve existing factual issues through a 'trial by affidavits.'" *Id.* (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). Courts are reluctant to dismiss by summary judgment Title VII discrimination suits where motive and intent are crucial elements and the proof is in the hands of the alleged wrongdoers. *Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757, 759 (9th Cir. 1980); *see Gifford v. Atchison, Topeka, & Santa Fe Railroad Co.,* 685 F.2d 1149, 1156 (9th Cir.1982) (EEOC finding of reasonable cause to believe that female plaintiff had been treated differently than similarly situated male employees was at least sufficient to create issue of fact as to employer's motive in terminating plaintiff, rendering resolution of issue on summary judgment improper).

■ Proctor's allegations of discriminatory motive, supported by her testimony that (1) her supervisors at Consolidated believed that they were under no obligation to accommodate her in her new position as a balancing clerk, and (2) Kowalski stated that Consolidated would not make any effort to accommodate her in her new position, raise an issue of fact which was im-

properly resolved by the district court on summary judgment.

## IV. ATTORNEY'S FEES

Proctor requested attorney's fees in the event that she succeeded on this appeal, pursuant to 42 U.S.C. § 2000e–5(k). Section 2000e–5(k) provides:

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs....

Proctor argues that an interim fee award is justified on this interlocutory appeal because it is "sufficiently significant and discrete to be treated as a separate unit." *See Smallwood v. National Can Co.*, 583 F.2d 419, 421 (9th Cir.1978) (fees awarded to prevailing party on appeal from issuance of permanent injunction); *Van Hoomissen v. Xerox Corp.*, 503 F.2d 1131, 1133 (9th Cir.1974) (fees awarded to successful party on appeal from denial of EEOC's motion to intervene on particular issues).

We disagree. A subsequent Supreme Court opinion casts doubt upon the applicability of the rationale employed in *Smallwood* and *Van Hoomissen* to a case such as this, where there has been no preliminary finding of liability on any issue. In *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam), the district court directed verdicts in favor of defendants and denied several of plaintiffs' motions. The Court of Appeals reversed the directed verdicts, and remanded the case to the district court for a new trial. *Id.* at 755, 100 S.Ct. at 1988. The Court of Appeals also awarded plaintiffs interim attorneys' fees for their efforts on appeal pursuant to 42 U.S.C. § 1988. *Id.* The Supreme Court reversed the fee award because plaintiffs had not prevailed on the merits of any of their claims and had established only that they were entitled to a trial. *Id.* at 758–59, 100 S.Ct. at 1989–90. The Court noted that the Congressional Committee Reports to section 1988 made reference to two cases which presented appropriate circumstances for an interim fee award. *Id.* at 757, 100 S.Ct. at 1989. In both cases the party to whom fees were awarded had established the liability of the opposing party, although final remedial orders had not been entered. *Id.* The Court stated:

It seems apparent ... that Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims. For only in that event has there been a determination of the "substantial rights of the parties," which Congress determined was a necessary foundation for departing from the usual rule in this country that each party is to bear the expense of his own attorney.

*Id.* at 757–58, 100 S.Ct. at 1989–90 (footnote omitted); *see Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (fee award under section 1988 is appropriate if the parties succeed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit."). *See also Escobar-Ruiz v. INS*, 787 F.2d 1294, 1296 (9th Cir.1986) (petitioner who attains only a remand to an administrative agency, and does not obtain relief upon the merits of the underlying action, is not prevailing party on appeal entitled to fees under Equal Access to Justice Act); *accord NLRB v. Doral Building Services, Inc.*, 680 F.2d 647, 647 (9th Cir.1982).

◼ Because the provision for attorney's fees in section 1988 was patterned upon the fee provision in 42 U.S.C. § 2000e–5(k), standards for an award of fees under section 1988 are the same as those under section 2000e–5(k). *Hensley*, 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7; *Hanrahan*, 446 U.S. at 758 n. 4, 100 S.Ct. at 1989 n. 4; *see Smith v. University of North Carolina*, 632 F.2d 316, 346–52 (4th Cir.1980) (relying on *Hanrahan* and refusing to award fees under section 2000e–5(k) to party who had obtained preliminary injunction; in order to prevail, party must establish in an enduring way that she was right on a matter in issue and that the litigation activities served to establish the existence of the right).

Proctor has established only that she is entitled to a trial on her discrimination claim on remand; she has not prevailed on the merits of her claim. *Cf. All American Distributing Co. v. Miller Brewing Co.*, 736 F.2d 530, 532–33 (9th Cir.1984) (distinguishing *Hanrahan* because dismissal of preliminary injunction claim is achievement of major goal in litigation); *Fitzharris v. Wolff*, 702 F.2d 836, 839 (9th Cir.1983) (distinguishing *Hanrahan* because Fitzharris obtained relief that he sought—he obtained a temporary restraining order against his transfer to a state prison which was never dissolved). Therefore, Proctor's request for fees is denied, without prejudice to a renewal of the request before the district court if she succeeds at trial.

The judgment is REVERSED and REMANDED. The request for attorney's fees is DENIED.