589 F.2d 397
 17 Fair Empl.Prac.Cas. 1644, 18 Empl. Prac.
Dec. P 8652
David ANDERSON, Plaintiff-Appellant,
v.
GENERAL DYNAMICS CONVAIR AEROSPACE DIVISION, a corporation,
and International Association of Machinists and Aerospace
Workers, AFL-CIO, Silvergate District Lodge 50, an
association, Defendants-Appellees.
 No. 77-2180.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 7, 1978.
Rehearing and Rehearing En Banc Denied Jan. 16, 1979.
 
 David Watkins (argued), of Jenkins & Watkins, Inc., Dallas, Tex., for plaintiff-appellant.
 Ward W. Waddell, Jr. (argued), of San Diego, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before HUFSTEDLER and GOODWIN, Circuit Judges, and LUCAS,* district judge.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 Anderson, a former employee of General Dynamics Convair Aerospace Division ("General Dynamics") brought this Title VII action against General Dynamics and the International Association of Machinists and Aerospace Workers, AFL-CIO, Silvergate District Lodge 50 ("Union"), claiming that he had been discharged in violation of the religious discrimination provisions of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e(j)). He sought reinstatement of employment and benefits, an injunction restraining the Union from discriminating against him, back pay and allowances, reasonable attorney's fees, costs and interest. The district court held that no accommodation to Anderson's religious beliefs was possible because his offer to contribute the amount of Union dues to a charity of his choice, rather than to the Union or charities of the Union's choice, imposed an undue hardship on the Union. (Anderson v. General Dynamics Convair Aerospace Division (S.D.Cal.1977) 430 F.Supp. 418.)
 
 
 2
 The critical issue on appeal is whether the Union carried its burden of proving that it could not reasonably accommodate Anderson's religious convictions without undue hardship on the Union. We conclude that it did not carry its burden of proof.
 
 
 3
 Anderson was first employed by General Dynamics on October 11, 1956. In 1959, he became a member of the Seventh Day Adventist Church. A tenet of the Church is that its members should not belong to or contribute to labor organizations. Anderson has at all material times held a sincere belief in that tenet. From 1959 until April 3, 1972, the collective bargaining agreement between General Dynamics and the Union did not require General Dynamics to employ only persons who were union members. On April 3, 1972, however, the Union and General Dynamics entered into a collective bargaining agreement, which contained the following provision:
 
 
 4
 "Any employee on the Company's active payroll who is in the bargaining unit and is not a member of the Union on 3 April, 1972, shall, as a condition of continued employment in the bargaining unit, join the Union within ten (10) days after the thirtieth (30th) day following the effective date of this agreement, and shall maintain his membership as provided in Paragraph A above."
 
 
 5
 Anderson did not join the Union within the time limitation provided by the security clause of the bargaining agreement. On May 25, 1972, the Union notified Anderson of his delinquency under the agreement. On June 12, 1972, Anderson informed General Dynamics, which, in turn, informed the Union, that his religious beliefs prohibited him from joining the Union. Two days later, the Union requested that Anderson be discharged for failure to abide by the provisions of the security clause. On June 16, 1972, General Dynamics discharged Anderson from his employment for the sole reason that he refused to become a member of or contribute to the Union.
 
 
 6
 The parties stipulated that neither the Union nor General Dynamics offered Anderson any specific alternatives or accommodations with respect to joining the Union, and both the Union and General Dynamics told Anderson that he had to follow the collective bargaining and join the Union. The parties also stipulated that Anderson had made known to his fellow workers, including his shop committeemen, that he would not join the Union and that he would not contribute to the Union, unless he could insure that his contributions went to a recognized charity.
 
 
 7
 Anderson promptly filed a complaint with the Equal Employment Opportunity Commission, which deferred the matter to the California Fair Employment Practice Commission ("FEPC"). The FEPC referred the case back to the EEOC. After finding reasonable cause to believe that Anderson's discrimination charge was well-founded, the EEOC attempted conciliation. When conciliation failed, EEOC issued a right to sue letter on October 5, 1975. Anderson timely filed a complaint in the district court. The district court rendered judgment against him, and he appeals.
 
 
 8
 Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) provides in pertinent part as follows:
 
 
 9
 "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin . . . ."
 
 
 10
 Similar conduct by a labor organization is also proscribed by the Act. (42 U.S.C. § 2000e-2(c).)[1]
 
 
 11
 In 1972, Congress enacted 42 U.S.C. § 2000e(j), incorporating the substance of the 1967 EEOC guidelines (29 C.F.R. § 1605.1). The section provides:
 
 
 12
 "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."
 
 
 13
 As the Supreme Court has explained, in Trans World Airlines, Inc. v. Hardison (1977) 432 U.S. 63, 74, 97 S.Ct. 2264, 2271, 53 L.Ed.2d 113. "The intent and effect of this definition was to make it an unlawful employment practice under § 703(a)(1) for an employer (and also for a union) not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." Neither Congress nor the EEOC has attempted to spell out any precise guidelines for determining when the "reasonable accommodations" requirement has been met, nor the kinds of circumstances under which a particular accommodation may cause hardship that is "undue." These decisions must be made in the particular factual context of each case because the decision ultimately turns on the reasonableness of the conduct of the parties under the circumstances of each case. (Redmond v. GAF Corp. (7th Cir. 1978) 574 F.2d 897, 902-03; Williams v. Southern Union Gas Co. (10th Cir. 1976) 529 F.2d 483, 489. Cf. Trans World Airlines, Inc. v. Hardison, supra, 432 U.S. at 74-75, 97 S.Ct. 2264.)
 
 
 14
 We, as well as other courts, have recognized that there is both tension and conflict between the legitimate interests of the Union in preserving the benefits of union security agreements, which are valid under the National Labor Relations Act (29 U.S.C. § 158), and the accommodation requirements of Title VII (E. g., Yott v. North American Rockwell Corporation (9th Cir. 1974) 501 F.2d 398; McDaniel v. Essex Intern'l, Inc. (6th Cir. 1978) 571 F.2d 338; Cooper v. General Dynamics, Convair Aerospace Division (5th Cir. 1976) 533 F.2d 163, 166-69). The balance has been struck, however, in favor of the elimination of discrimination in employment practices and requiring accommodation of religious practices absent proof by the Union, the employer, or both, that reasonable accommodation cannot be made without an undue hardship to the Union or to the employer. (Trans World Airlines, Inc. v. Hardison, supra, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113; McDonald v. Santa Fe Trail Transportation Co. (1976) 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493; Franks v. Bowman Transportation Co. (1976) 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444.)
 
 
 15
 To establish a prima facie case of discrimination under §§ 2000e-2(a)(1) & (j), Anderson had the burden of pleading and proving that (1) he had a bona fide belief that union membership and the payment of union dues are contrary to his religious faith;[2] (2) he informed his employer and the Union about his religious views that were in conflict with the Union security agreement; and (3) he was discharged for his refusal to join the Union and to pay union dues. (E. g., Mott v. North American Rockwell Corp., supra, 501 F.2d 398; Redmond v. GAF Corp., supra, 574 F.2d at 901.)[3] Both by stipulations of fact and by evidence introduced at trial, Anderson established his prima facie case.
 
 
 16
 The burden was thereafter upon General Dynamics and the Union to prove that they made good faith efforts to accommodate Anderson's religious beliefs and, if those efforts were unsuccessful, to demonstrate that they were unable reasonably to accommodate his beliefs without undue hardship. Id. at 902.
 
 
 17
 Neither the Union nor General Dynamics did anything to accommodate Anderson's religious beliefs. They contend that their failure to take any steps to accommodate is excused because Anderson insisted on making an equivalent payment to a charity of his choice, rather than paying the equivalent fund to the Union for charitable purposes. They rely heavily upon the district court's finding that Anderson's refusal to pay his charitable contribution to the Union was based on his general distrust of unions, rather than on religious beliefs. Finally, they argue that Anderson's suggestion of accommodation would work undue hardship as a matter of law because Anderson would become a "free rider."
 
 
 18
 The burden was upon the appellees, not Anderson, to undertake initial steps toward accommodation. They cannot excuse their failure to accommodate by pointing to deficiencies, if any there were, in Anderson's suggested accommodation. Thus, Anderson's motivation in selecting his own charity is irrelevant. Moreover, the district court's finding is contrary to the parties' stipulation of fact that teachings of Anderson's Church forbade making contributions to unions.
 
 
 19
 Appellees are left with the argument that Anderson's refusal to pay either his union dues or the equivalent of union dues to the Union for a charity of the Union's choice would be an undue hardship as a matter of law because the means of accommodation would create "free riders." The district court accepted this argument; we do not. We follow the Sixth Circuit in McDaniel v. Essex International, Inc., supra, 571 F.2d 338, with which our case is almost identical.
 
 
 20
 McDaniel was a Seventh Day Adventist who had a bona fide religious belief that membership in the union and the payment of union dues was a violation of her religion. She requested her employer and the union to make an accommodation to her religious beliefs, and she suggested that she would be willing to contribute an amount equal to the union dues to a non-sectarian charity to be chosen by the union and her employer. Neither responded to her request, and she was discharged for her failure to adhere to the requirements of the union security agreement. The district court granted summary judgment in favor of the union and the employer, accepting their contentions that the accommodation that the employee suggested would work an undue hardship on the union as a matter of law because non-payment of union dues adversely affected the "financial core" of the union and thus impaired its ability to fulfill its collective bargaining functions. The McDaniel court reversed. The court pointed out that the union security provisions of the Taft-Hartley Act (29 U.S.C. § 158(a)(3), (b)(2) (1970)) "do not relieve an employer or a union of the duty of attempting to make reasonable accommodation to the individual religious needs of employees. (citations omitted). The burden is on Essex and IAM to make an effort at accommodation and, if unsuccessful, to demonstrate that they were unable to reasonably accommodate the plaintiff's religious beliefs without undue hardship. The district court found that it would work an undue hardship on IAM to forego the dues payment by the plaintiff. There is no factual basis in the record for this conclusion. In Draper v. U. S. Pipe & Foundry Co., supra ((6th Cir. 1976) 527 F.2d 515), this court expressed its skepticism concerning 'hypothetical hardships' based on assumptions about accommodations which have never been put into practice. 527 F.2d at 520." (571 at 343.)
 
 
 21
 Here, as in McDaniel, neither the Union nor the employer offered any evidence to prove that union members thought that a person was a free rider if he paid the equivalent of union dues to a charity, nor was there any evidence offered to prove as a fact that the accommodation of Anderson would otherwise have been an unduly difficult problem for the Union. It relied simply upon general sentiment against free riders.
 
 
 22
 Undue hardship means something greater than hardship. Undue hardship cannot be proved by assumptions nor by opinions based on hypothetical facts. Even proof that employees would grumble about a particular accommodation is not enough to establish undue hardship. As the Supreme Court pointed out in Franks v. Bowman, supra, 424 U.S. at 775, 96 S.Ct. at 1269, Quoting United States v. Bethlehem Steel Corp. (2d Cir. 1971) 446 F.2d 652, 663: " 'If relief under Title VII can be denied merely because the majority group of employees, who have not suffered discrimination, will be unhappy about it, there will be little hope of correcting the wrongs to which the Act is directed.' "[4]
 
 
 23
 We conclude that the Union and General Dynamics failed to carry their burden of proof, and, accordingly, the judgment must be reversed.[5] We also conclude that Anderson is entitled to a reasonable attorney's fee as part of his costs, pursuant to 42 U.S.C. § 2000e-5(k), the amount of which shall be fixed by the district court on remand.
 
 
 24
 Reversed and remanded for further proceedings consistent with the views herein expressed.
 
 
 
 *
 Honorable Malcolm M. Lucas, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 Section 2000e-2(c) provides as follows:
 "It shall be an unlawful employment practice for a labor organization
 (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;
 (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or
 (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section."
 
 
 [2]
 We have no occasion in this case to determine the breadth of the "beliefs" or "practices" protected by section 2000e(j) or to grapple with bona fides of a particular employee's religious convictions. Both of these facts are conceded for the purpose of this case. We are aware, however, of the Supreme Court's admonition in Fowler v. Rhode Island (1953) 345 U.S. 67, 70, 73 S.Ct. 526, 527, 97 L.Ed. 828 that "it is no business of courts to say . . . what is a religious practice or activity . . . ." See also Redmond v. GAF Corp., supra, 574 F.2d at 900
 
 
 [3]
 We agree with the Seventh Circuit that the employee who has provided his employer with sufficient information to put it on notice of his religious needs is not required, as part of his prima facie case, to show that he thereafter made some efforts either to compromise or accommodate his own religious beliefs before he can seek an accommodation from his employer. (Redmond v. GAF Corp., supra, 574 F.2d at 901-02 ("While we feel plaintiff should be free, even encouraged, to suggest to his employer possible ways of accommodating his religious needs, we see nothing in the statute to support the position that this is part of plaintiff's burden of proof." Id. at 901).)
 
 
 [4]
 Appellees can take no comfort from the observation in Yott v. North American Rockwell Corp., supra, 501 F.2d at 403: "If appellees are able to demonstrate that any suggested accommodation would impose undue hardship on the Union or the employer's business, then Yott's discrimination claim should fail." We reversed in Yott because the appellees had not demonstrated that the suggested accommodation would impose undue hardship, and, as we have explained the appellees in this case have not done so either
 
 
 [5]
 The appellees attacked the constitutionality of the provisions of Title VII in issue in this case, and they renew that attack, at least obliquely, on appeal. The district court did not reach any constitutional issue, and under these circumstances we also decline to address any constitutional questions