**Ruby EDWARDS, Plaintiff,**

v.

**SCHOOL BOARD OF the CITY OF NORTON, VIRGINIA, Defendant.**

**No. 77–0057–B.**

United States District Court,
W. D. Virginia,
Big Stone Gap Division.

Jan. 18, 1980.

Robert T. Copeland, Abingdon, Va., for plaintiff.

Kenneth P. Asbury, Wise, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This action is brought by plaintiff to enforce the provisions of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* Specifically, plaintiff contends that her employer, the defendant,

failed to accommodate her religious practices and, thereby, unlawfully discriminated against her under 42 U.S.C. § 2000e–2(a)(1). This court has jurisdiction over the dispute pursuant to 42 U.S.C. § 2000e–5(f)(3). A summary of the facts in this case is stated below:

## I.

In September of 1967, plaintiff, Ruby Edwards, was first employed by defendant, the School Board of the City of Norton, Virginia, as a teacher's aide in the Norton Elementary School. Sometime in 1968 plaintiff became a member of the Worldwide Church of God and this association became known to defendant.

As a member of this church, plaintiff felt church doctrine required her to abstain from secular work on seven annual holy days.[1] These holy days drew their basis from the Bible and were fixed in accordance with the Jewish calendar. Six of the seven holy days occurred during the school year and, thereby, required plaintiff to be absent from her job if the days did not fall on weekends.[2] However, plaintiff believed that the Feast of Tabernacles required her to attend an eight-day regional religious convocation during which she must abstain from secular work. Since this feast contained only two of the holy days, during any given school year plaintiff would be absent from her job from five to ten days for religious purposes.[3]

During the 1968–69, 1969–70, and 1970–71 school terms, plaintiff requested and obtained permission to be absent from work to observe these holy days. In the fall of 1971 plaintiff was told by defendant that her absences for the holy days would no longer be allowed. It was explained to plaintiff that due to her changing responsibilities as a teacher's aide, she would have to fulfill her 180-day contract. However, her yearly contract was renewed and she was allowed to take leave for the holy days.

Then, before signing her contract for the 1972–73 school term, plaintiff was made aware that the contract required 180 days of work and that defendant expected her to fulfill the obligation. However, after the school year started, plaintiff requested leave from work to attend the Feast of Tabernacles during September, 1972. The defendant denied plaintiff's request and advised her that if she did take leave during this period that she would be dismissed. Plaintiff ignored defendant's warning and missed six school days while attending the feast. Upon her return from the religious convocation, plaintiff was informed of her dismissal.

Plaintiff's responsibilities as a teacher's aide changed composition from 1968 to 1972. Initially, the job required plaintiff to collect lunch money, grade papers, supervise playgrounds, and work in the cafeteria. But, by 1972, the major thrust of the job required plaintiff to provide individual math and reading instruction to the students, especially the educable mentally retarded and slow learners.

Specifically, plaintiff was one of two teacher's aides in an "open concept" educational unit consisting of a four-teacher team. The teacher-aide positions were created from federal funds that were designated to provide individual instruction to educationally deprived students. While subject

1. The seven annual holy days are: the Day of Atonement; the first and last days of Unleavened Bread; Pentecost; the Feast of Trumpets; the first day of the Feast of Tabernacles and the Last Great Day following the feast. The biblical basis for these holy days may be found at Leviticus, chapter 23. Church doctrine that incorporates the observance of these holy days may be found in the church's "Fundamentals of Belief," Article 13.

2. The dates for the holy days are inflexibly set by the Old Testament and, therefore, may fall on different days of the week in different years. For example, the first day of the seventh month is the Feast of Trumpets. *See* Leviticus, chap. 23, v. 24.

3. This computation considers the possibilities that all of the holy days besides the Feast of Tabernacles could or could not fall on weekends and that every Feast of Tabernacles will include at least one weekend. Possible travel time to and from the regional Feast of Tabernacles has not been included in this computation.

to the direction of the four teachers, the aides were to engage in no more than one hour of non-instructional activity per day. These teacher-aide jobs did not provide for vacation time, nor were substitutes available in the event that an aide was absent. It was while employed in this capacity that plaintiff was dismissed.

Based upon the above facts, plaintiff contends that defendant violated Title VII by failing to accommodate her religious practices. Defendant has countered plaintiff's assertion by questioning whether her religious beliefs are cognizable under Title VII and, in the alternative, by arguing that because of the undue hardship that resulted from plaintiff's religious practices, defendant was not required to make any accommodations to plaintiff.

## II.

■ Under 42 U.S.C. § 2000e–2(a)(1), it is considered an unlawful employment practice for an employer to discharge any employee on the grounds of that individual's religion.[4] In order to establish a *prima facie* case under this provision, plaintiff must prove three factors: (1) that she held a bona fide religious belief or engaged in a bona fide religious practice; (2) that defendant-employer had notice of plaintiff's religious beliefs; and, (3) that plaintiff was discharged for refusing to comply with an employment requirement because it was contrary to her religious beliefs. *See Brown v. General Motors Corp.*, 601 F.2d 956 (8th Cir. 1979); *Burns v. Southern Pacific Transportation Co.*, 589 F.2d 403 (9th Cir. 1978); *Anderson v. General Dynamics Convair Aerospace Division*, 589 F.2d 397 (9th Cir. 1978); *Redmond v. GAF Corp.*, 574 F.2d 897 (7th Cir. 1978). While there is no dispute that plaintiff satisfied the notice and basis of discharge requirements, defendant contends that it is not a bona fide religious practice to refrain from secular work on holy days.

Specifically, defendant argues that the church's "Fundamentals of Belief" does not require a member to refrain from secular work on holy days. But, assuming that church "custom" requires a refrain from secular work on holy days, defendant also contends that only the first and last days of the Feast of Tabernacles are considered holy and, therefore, nothing forbids work during the intervening period. Hence, it is argued that plaintiff's eight-day attendance at the Feast of Tabernacles was not a bona fide religious practice.

■ The Code broadly defines religion as "includ[ing] all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). This definition requires a two-part determination of: (1) what is a bona fide religious belief, and (2) what is a bona fide religious observance or practice that is based upon a bona fide religious belief.

A religious belief excludes mere personal preference grounded upon a non-theological basis, such as personal choice deduced from economic or social ideology. Rather, it must consider man's nature or the scheme of his existence as it relates in a theological framework. Furthermore, the belief must have an institutional quality about it and must be sincerely held by plaintiff. *See generally Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Welsh v. United States*, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); *Redmond*, 574 F.2d at 900–01; *Brown v. Pena*, 441 F.Supp. 1382 (S.D.Fla.1977).

■ The "Fundamentals of Belief," as established by the Worldwide Church of God, constitutes the framework of a religious belief. At trial, it was proven beyond doubt that plaintiff sincerely believes in this doctrine.

---

4. 42 U.S.C. § 2000e–2(a)(1) states:
 (a) It shall be an unlawful employment practice for an employer—
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privilege of employment, because of such individual's race, color, religion, sex, or national origin;
 · · · ·

As to defendant's argument that plaintiff's religion does not require her to abstain from secular work on holy days, this court concurs with the Seventh Circuit's interpretation of § 2000e(j) in *Redmond*, 574 F.2d at 900.

First, we note that the very words of the statute ('all aspects of religious observance and practice . . . .') leave little room for such a limited interpretation. Secondly, we note that to restrict the act to those practices which are mandated or prohibited by a tenet of the religion, would involve the court in determining not only what are the tenets of a particular religion, which by itself perhaps would not be beyond the province of the court, but would frequently require the courts to decide whether a particular practice is or is not required by the tenets of the religion. We find such a judicial determination to be irreconcilable with the warning issued by the Supreme Court in *Fowler v. Rhode Island*, 345 U.S. 67, 70, 73 S.Ct. 526, 527, 97 L.Ed. 828 (1953), '[I]t is no business of courts to say . . . what is a religious practice or activity . . . .'

Hence, plaintiff's religious interpretation that she must refrain from work for an eight-day period to attend a regional Feast of Tabernacles is to be considered a bona fide religious practice. It follows that defendant's attack on the validity of plaintiff's religious practices is without merit.

### III.

The critical issue in this dispute concerns the accommodation clause of 42 U.S.C. § 2000e(j). That provision states:

The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

---

5. The *Hardison* decision concerned the accommodation problem within the context of a seniority provision in a collective bargaining

In *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), the Court confronted the accommodation issue and acknowledged that it is "the employer's statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *Id.* at 75, 97 S.Ct. at 2272. But, the Court observed, "the reach of that obligation has never been spelled out by Congress or by EEOC guidelines." *Id.*[5] Whatever the reach of the employer's obligation, however, a finding of more than a *de minimus* cost will constitute an undue hardship. *Id.* at 84, 97 S.Ct. 2264.

Post-*Hardison* decisions have differed over the parameters of the employer's obligation under the accommodation clause. The Sixth and Ninth Circuits have placed the burden upon an employer "to prove that [he] made good faith efforts to accommodate [plaintiff's] religious beliefs and, if those efforts were unsuccessful, to demonstrate that they were unable reasonably to accommodate his beliefs without undue hardship." *Anderson*, 589 F.2d at 401. *See also Yott v. North American Rockwell Corporation*, 602 F.2d 904 (9th Cir. 1979); *Burns*, 589 F.2d 403; *McDaniel v. Essex International, Inc.*, 571 F.2d 338 (6th Cir. 1978). Hence, the first inquiry under this line of decisions is whether the employer took active steps to accommodate the employee and, if not, the statutory obligation is not satisfied.

On the other hand, the Seventh and Eighth Circuits do not require an employer to take active steps at accommodation but, rather, allow an employer to fulfill his obligation by proving that any proposed or possible accommodation would create an undue hardship. *See Brown*, 601 F.2d 956; *Redmond*, 574 F.2d 897. So, the issue under these decisions only concerns a factual determination of undue hardship.

This court accepts the latter interpretation of the accommodation clause as it represents the plain reading of 42 U.S.C.

---

agreement. That problem does not arise in the case at bar.

§ 2000e(j) and *Hardison*. The statute only speaks in terms of "undue hardship" and never requires an active burden of the employer to make accommodation efforts when he feels an undue hardship is present. Similarly, the *ratio decidendi* of *Hardison* does not require a finding that the employer take active steps to accommodate in a case when any accommodation may constitute an undue hardship.

It follows that this court chooses not to follow the opinion of the Sixth and Ninth Circuits. Those decisions drew the "active effort" requirement from a footnote in *Hardison* that recounted the statutory history of 42 U.S.C. § 2000e(j) [6] and from the fact that the employer in *Hardison* had made efforts at accommodation. However, this court notes that the footnote material left open the question about the reach of an employer's obligation and, further, that the footnote was *dicta*. Also, the situation in

*Hardison* indicated that the employer in fact made accommodation efforts, but the Court never stated that such efforts were a requirement of 42 U.S.C. § 2000e(j).

So, defendant's failure in the case at bar to make an active accommodation effort does not preclude it from proving undue hardship in any accommodation and, thereby, satisfy its statutory obligation.[7] But, because defendant did not make any accommodation efforts, the burden of proving undue hardship in a factual vacuum is particularly onerous.

Defendant's evidence of undue hardship consisted of several witnesses' opinions that failure of plaintiff to provide the students day-to-day instruction resulted in great harm to the students' educational progress. This concern was highlighted by the fact that no substitutes were available to replace plaintiff.[8] Also, some of defendant's

---

**6.** Footnote nine in *Hardison* states:

Section 701(j) [42 U.S.C. § 2000e(j)] was added to the 1972 amendments on the floor of the Senate. The legislative history of the measure consists chiefly of a brief floor debate in the Senate, contained in less than two pages of the Congressional Record and consisting principally of the views of the proponent of the measure, Senator Jennings Randolph. 118 Cong.Rec. 705–706 (1972).

The Congressional Record, 118 Cong.Rec. 706–713 (1972), also contains reprints of *Dewey* and *Riley v. Bendix Corp.*, 330 F.Supp. 583 (M.D.Fla.1971), rev'd, 464 F.2d 1113 (CA5 1972), as well as a brief synopsis of the new provision, which makes reference to *Dewey*, 118 Cong.Rec. 7167 (1972). The significance of the legislative references to prior case law is unclear. In *Riley* the District Court ruled that an employer who discharged an employee for refusing to work on his Sabbath had not committed an unfair labor practice even though the employer had not made any effort whatsoever to accommodate the employee's religious needs. It is clear from the language of § 701(j) that Congress intended to change this result by requiring some form of accommodation; but this tells us nothing about how much an employer must do to satisfy its statutory obligation.

The reference to *Dewey* is even more opaque:

'The purpose of this subsection is to provide the statutory basis for EEOC to formulate guidelines on discrimination because of religion such as those challenged in *Dewey v. Reynolds Metals Company*, 429 F.2d 324 (6th

Cir. 1970), *Affirmed by an equally divided court*, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267 (1971).' 118 Cong.Rec. 7167 (1972). Clearly, any suggestion in *Dewey* that an employer may not be required to make *reasonable* accommodation for the religious needs of its employees was disapproved by § 701(j); but Congress did not indicate that 'reasonable accommodation' requires an employer to do more than was done in *Dewey*, apparently preferring to leave that question open for future resolution by the EEOC. See also n. 8, *supra*.

*Hardison*, 432 U.S. at 74–75 n. 9, 97 S.Ct. at 2272 n. 9.

**7.** Defendant argues that it made an accommodation effort by asking plaintiff not to refrain from secular work in the intervening period between the first day of the Feast of Tabernacles and the Last Great Day following the feast. This is the same as asking plaintiff not to observe her bona fide religious practices and, therefore, is not an accommodation to her religion but rather a request not to practice her religion. *See Redmond*, 574 F.2d at 903.

**8.** *Cf. Rankins v. Commission on Professional Competence*, 24 Cal.3d 167, 154 Cal.Rptr. 907, 593 P.2d 852 (1979). In *Rankins*, a case decided under the state constitution, the court used *Hardison* rationale to rule that a school must accommodate a teacher who wanted to observe the holy days as mandated by the Worldwide Church of God. However, the decision hinged upon the fact that the teacher had substitutes to replace her on absent days.

witnesses were of the opinion that other school personnel might complain because of the special treatment plaintiff would receive.

■ In determining the possibility of "reasonable accommodation," the issue is one of fact that must be viewed in light of the particular employer-employee relationship.

The term 'reasonable accommodation' is a relative term and cannot be given a hard and fast meaning. Each case involving such a determination necessarily depends upon its own facts and circumstances, and comes down to a determination of 'reasonableness' under the unique circumstances of the individual employer-employee relationship. The trier of fact is in the best position to weigh these considerations.

*Redmond*, 574 F.2d at 902–03.

[8, 9] The only accommodation brought up in the case at bar is to allow plaintiff to be absent from work on the holy days. Thus, the burden shifts to defendant to prove the accommodation is unreasonable by showing that it would create an undue hardship on the conduct of the school's operation.[9]

"Undue hardship means something greater than hardship. Undue hardship cannot

be proved by assumptions nor by opinions based on hypothetical facts." *Anderson*, 589 F.2d at 402. Indeed, many courts have expressed great skepticism about "'hypothetical hardships' based on assumptions about accommodations which have never been put into practice." *McDaniel*, 571 F.2d at 343. *See also Brown*, 601 F.2d at 960; *Burns*, 589 F.2d at 406; *Anderson*, 589 F.2d at 402.

■ Applying the above law to the facts at bar, this court is of the opinion that defendant failed to sustain its burden of proving undue hardship. While sympathetic to defendant's fears of undue hardship suffered by the students, such a finding cannot be made on mere opinion and speculation. Furthermore, this court finds that these speculative hardships were a product of hindsight created in preparation for this trial and not the considered rationale at the time of plaintiff's dismissal. In other words, defendant was not concerned, much less accommodating, with plaintiff's religion at the time of her dismissal. The law requires more direct evidence than personal assumptions subsequently made in a factual vacuum.

It follows that plaintiff was wrongfully discharged from her employment as stated in 42 U.S.C. § 2000e–2(a)(1).[10]

---

9. After the final draft of this opinion was completed, plaintiff brought to the court's attention certain recently proposed regulations by the EEOC. Specifically, plaintiff points out that § 1605.2 of the proposed regulations, 44 Fed. Reg. 53706, requires the employer to make an active effort to accommodate. This court disagrees with plaintiff's interpretation. Section 1605.2(b)(2) places an obligation on the employer "to explore all possible methods of reasonable accommodation" but allows a refusal to accommodate "when an employer . . . can demonstrate that an undue hardship would in fact result from each alternative."

The proposed guideline comports with this court's opinion that an employer can prove, without active efforts, that all accommodations will create an undue hardship. If a distinction can be drawn between this opinion and the regulations, it is noted that the regulations are merely proposed and not yet final.

10. The only post-*Hardison* decision in the Fourth Circuit is *Jordan v. North Carolina National Bank*, 565 F.2d 72 (4th Cir. 1977). In

that case, plaintiff insisted that her employment contract contain a "guarantee" that she would never have to work on Saturday due to certain religious beliefs. Defendant-employer, fully aware of plaintiff's religion, still wanted to hire her and promised to do its best to accommodate her when the need arose. In fact, defendant had accommodated another full-time employee who shared the same religious beliefs as plaintiff. But, defendant refused to enter an absolute formal binding guarantee that it might not be able to perform and so create potential liability.

The court, in a 2–1 decision, held that defendant's promise constituted a reasonable accommodation and that plaintiff's covenant requirement spoke of "its own unreasonableness and thus [was] beyond accommodation." *Id.* at 76. In so holding, the court noted that the only thing standing between plaintiff and employment was her own unjustifiable specification and not an act of religious discrimination on the part of defendant.

### IV.

In seeking relief, plaintiff has requested back pay to September, 1972, and reinstatement to her former position. This court has broad discretion in fashioning an award under 42 U.S.C. § 2000e–5(g).[11]

 Since there are no property interests at stake, *see Burt v. Board of Trustees*, 521 F.2d 1201, 1205–06 n. 6 (4th Cir. 1975), *citing, Burton v. Cascade School District*, 512 F.2d 850 (9th Cir. 1975), this court may only determine what effect plaintiff's one-year contract has on the remedy sought. Plaintiff's award will be limited to one-year back pay if a factual determination is made that defendant would not have renewed her contract for the 1973–74 school term, regardless of her religious practices. *See Edwards v. Gladewater Independent School District*, 572 F.2d 496 (5th Cir. 1978) (held to be an unlawful employment practice on a factual determination that a teacher's employment contract was not renewed because she was black).

 This court concludes from the evidence that defendant would not have renewed plaintiff's contract for the 1973–74 school term, regardless of her religion, due to inadequate service resulting from excess absences. Therefore, back pay is limited to one year and reinstatement is denied.

As stated previously, prior to 1972 a teacher's aide job consisted chiefly of clerical work which did not mandate day-to-day presence. Beginning with the 1972–73 school term, however, the job required daily individualized instruction to educationally deprived students with no more than one hour per day being allotted to noninstructional activity.

After this transformation of job description, defendant would not have renewed a contract for an aide who could not perform her obligation. This is especially true since the teacher-aide jobs did not provide for vacation time, nor were substitutes available when aides were absent. Also, in plaintiff's case, her contract would not have been renewed regardless of her religious absences because of the great number of her nonreligious absences.[12] It is concluded that the evidence shows that defendant justifiably would not have renewed plaintiff's contract because her excess absences rendered her services to the school inadequate. Hence, plaintiff is not entitled to reinstatement or back pay to the present date because her contract would not have been renewed for a "reason other than discrimination on account of . . . religion." 42 U.S.C. § 2000e–5(g).

This case is not helpful to the analysis of the case at bar. The issue in *Jordan* concerned an employee's unreasonable demands after the employer had made a reasonable accommodation, whereas the case at bar considers the situation when the employer has made no accommodation and must sustain his resultant burden of proof at trial to show undue hardship. Although both situations concern the same "coin," the legal issues differ as to make *Jordan* distinguishable from the present case.

11. Title 42 U.S.C. § 2000e–5(g) states:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e–3(a) of this title.

12. Plaintiff was absent 29½ days during the 1969–70 school term; 13½ days during the 1970–71 school term; and 22 days during the 1971–72 school term.

In accordance with the rationale stated above, plaintiff is entitled to the remaining unpaid balance of her salary for the 1972–73 school term. Evidence has shown this to be Two Thousand Three Hundred Fifty Two Dollars and Eighty Two Cents ($2,352.82).[13] While the court does not find it necessary to go into the issue of whether or not the plaintiff made a bona fide attempt to mitigate her damages, the court is of the opinion that she only applied at places where it was very obvious that her ability to obtain a job was slim and she did not attempt to find employment outside the area in which she lived.

13. Plaintiff's total salary for the 1972–73 school term was $2,601.45. However, she had received $248.63 before the discharge.