**Jeff DRAZEWSKI and Sandra Brown, Plaintiffs,**

v.

**WAUKEGAN DEVELOPMENT CENTER, Della Klevs, Director Waukegan Development Center, Illinois Department of Mental Health, Michael Belletire, Director Illinois Department of Mental Health, Defendants.**

Nos. 85 C 1949, 85 C 1950.

United States District Court, N.D. Illinois, E.D.

Dec. 12, 1986.

Vernon L. Alger, Berrien Springs, Mich., Penny Nathan Kahan, Chicago, Ill., for plaintiffs.

Paula Giroux, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

These consolidated cases are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by Jeff Drazewski and Sandra Brown. Plaintiffs charge that the Waukegan Development Center ("Waukegan"), a state institution operated by the Illinois Department of Mental Health and Development Disabilities ("DMH & DD") discriminated against them because of their religious beliefs. Defendants have moved for summary judgment, and plaintiffs cross-move for partial summary judgment on the issue of defendant's liability. Because the court finds that genuine issues of material fact remain in dispute, both motions are denied.

## FACTS

The following facts are not disputed. Waukegan operates five "live-in" facilities for severely mentally retarded adolescents and adults. These facilities operate on a 7–day per week, 24–hour per day basis to provide services to their residents. Each live-in facility is divided into approximately ten "homes", with each home housing about ten residents. Each home is staffed by one Mental Health supervisor and about ten Mental Health Technicians ("MHT's"), who work over three shifts. An MHT is assigned to work one of three shifts: first shift 6:30 a.m. to 3:00 p.m.; second shift 2:30 p.m. to 11:00 p.m.; and third shift 10:45 p.m. to 6:45 a.m. Approximately two to three MHT's work the first two shifts in each home, and one or two work the last shift. At the times relevant to these cases, about 400–500 MHT's were employed to cover the staffing needs of the five facilities.

The schedule of work days for the first and second shifts operates on a rotating seven-day pattern over three weeks. The schedule is designed to allow all MHT's one weekend off in the three week rotation. Those on third shift are on a seven week rotation, with two long weekends off out of seven weekends. Under the collective bargaining agreement between Waukegan and the employee's union, shift assignments are allocated on the basis of seniority, and a senior employee can "bump" a junior employee off a shift which the senior employee prefers.

Plaintiff Sandra Brown was hired as an MHT Trainee at Waukegan on September 13, 1983. Ms. Brown is a member of the Seventh Day Adventist religion. Her reli-

gion proscribes working on the sabbath— from sundown Friday through sundown Saturday. After a short training period Ms. Brown was assigned to the second shift (2:30 p.m. to 11:00 p.m.) on September 23, 1983. She subsequently refused to work on her sabbath, and therefore was discharged on September 30, 1983.

Plaintiff Jeff Drazewski is also a member of the Seventh Day Adventist faith and observes the sundown Friday to sundown Saturday sabbath. Mr. Drazewski was hired as an MHT Trainee on September 13, 1983. After his training period ended he was assigned a regular shift, but refused to work on his sabbath. As a result, he was discharged on October 2, 1983.

There is no dispute in this case that Waukegan refused to make any changes in its scheduling to accommodate plaintiffs' needs to have their sabbath off. In fact, defendants take the position that, because of complexities involved in scheduling MHT's to staff five facilities on a continuous around-the-clock basis, it must maintain a rigid across-the-board policy of not permitting schedule changes for any employee, regardless of the employee's reason for the request for a change in schedule.

## ANALYSIS

Title VII prohibits an employer from firing an employee solely on the basis of his religion, 42 U.S.C. § 2000e–2(a)(1), unless the employer can show that "he is unable to reasonably accommodate an employee's or prospective employee's religious observation or practice without undue hardship on the conduct of the employer's business". 42 U.S.C. § 2000e(j).

In order to establish a prima facie case of religious discrimination, a plaintiff must show that: (1) his practices are religious; (2) he called his religious practices to the attention of his employer; and (3) his practices were the basis for his discharge. *Baz v. Walters*, 782 F.2d 701, 706 & n. 5 (7th Cir.1986). Once the plaintiff makes this showing, the burden shifts to the employer to demonstrate that he cannot accommodate the plaintiff's religious practic-

es without undue hardship to the employer's business. *Id.* at 706. If the defendant is able to meet this burden, the plaintiff must then show that the employer's proffered reasons for failure to accommodate are a pretext for religious discrimination. *Id.*

There is no dispute in this case that plaintiffs' practices (refusal to work on their sabbath) were religious, and that those practices were the reason for their discharge. There is also no dispute that plaintiff Drazewski called his practices to the defendants' attention. However, defendants do contend that Ms. Brown failed to call her religious practices to defendants' attention, and hence has failed to establish a prima facie case.

The evidence in the record is conflicting on the question whether Ms. Brown notified Waukegan of her religious practices. Apparently Ms. Brown was interviewed twice before she was hired. The record reveals that during her first interview, on April 27, 1983, she told Waukegan that she could not work on Saturdays. This is reflected on her "interview sheet." (Ex. G–2 attached to Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment). But her interview sheet for August 3, 1983, fails to show if she told the interviewer that she could not work on Saturdays. (*Id.*, Ex. G–1). However, in her deposition, Ms. Brown testified that she did disclose at the August interview that she could not work on Saturdays; in contrast the interviewer, Sharon Kendall, states in her affidavit that Ms. Brown did not reveal the Saturday problem.

Thus, there is conflicting evidence in the record as to whether Ms. Brown revealed in her last interview that she could not work on Saturdays. This conflict is of no importance, however. The record shows that, at least as a result of the April interview, Waukegan had notice that Ms. Brown could not work on Saturdays. Although as a general rule to establish a prima facie case a plaintiff must prove that she called her religious practices to her

employers attention, this requirement can be waived where the record reveals that the employer had notice of the employee's practices. 782 F.2d 701, 706 n. 5 (7th Cir. 1986). Accordingly, the court finds that both plaintiffs have established a prima facie case of religious discrimination.

■ The real issue in this case is whether defendants have met their burden of establishing that they could not accommodate plaintiffs' religious practices without undue hardship to Waukegan's business. The leading precedent is *Transworld Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), the only case in which the Supreme Court has addressed the concepts of "accommodation" and "undue hardship". In *Hardison,* the employee, a member of the Worldwide Church of God, asked his employer for Saturdays off from work, as that was the church's sabbath. The employer operates a large maintenance and overhaul base and needed workers 24 hours a day. A seniority system prescribed by the collective bargaining agreement determined which employees would get their preference of shifts. Before his transfer to a new division, Hardison enjoyed his choice of a shift which allowed him Saturdays off; this right to choose existed because of his seniority in his old division. As a result of the transfer (which occurred at his request), Hardison lost his seniority. The union refused to agree to a change of work assignment, which would allow Hardison to have Saturdays off, since the change would violate the seniority provisions of the collective bargaining agreement. Hardison then proposed to TWA that he work only four days a week, but the employer rejected the proposal.

The Supreme Court held that TWA had not failed its duty to accommodate. Turning to what it considered the "principal issue in the case", *id.* at 83 n. 14, 97 S.Ct. at 2276 n. 14, the Court reasoned that the

duty to accommodate does not take precedence over seniority rights enunciated in a collective bargaining agreement. *Id.* at 83, 97 S.Ct. at 2276. In addition, the Court held that Hardison's four-day work week proposal involved costs to TWA that amounted to "undue hardship." *Id.* at 84, 97 S.Ct. at 2276. The Court concluded that "[t]o require TWA to bear more than a *de minimus* cost in order to give Hardison Saturdays off is undue hardship." *Id.* Finally, the Court stated that giving Hardison Saturdays off by "incurring extra costs to secure a replacement for Hardison" would constitute a "privilege allocated according to religious beliefs," which the Court implied was a form of reverse discrimination. *Id.* at 84–85, 97 S.Ct. at 2276–77.

It is clear from *Hardison* that a court may not require an employer to make involuntary shift assignments that violate the seniority provisions of a collective bargaining agreement in order to accommodate an employee's religious practices. But, where the seniority issue does not arise, the opinion is of little aid in deciding what other factors ought to be considered in a given case. In the wake of *Hardison* various approaches to the accommodation problem have emerged. This court, however, adopts the approach of those cases which balance the religious interest of the employee against the business interest of the employer. This approach is the only one which conforms to the language of § 2000e(j).[1] It is obvious from the statutory language that Congress placed an affirmative duty on employers to accommodate the religious practices of an employee, unless to do so would place "undue hardship on the conduct of the employer's business."

In the present case the record shows that defendants considered and rejected several methods of accommodation. The first alternative involved voluntary swapping of days off. Defendants rejected this alterna-

---

1. For its analysis of the relevant case law the court is indebted to a recent student note analyzing *Hardison* and its aftermath in the lower courts. *See,* Note, *Heaven Can Wait: Judicial*

*Interpretation of Title VII's Religious Accommodation Requirements Since Trans World Airlines v. Hardison,* 53 Fordham L.Rev. 839 (1985), (hereinafter *"Heaven Can Wait"*).

tive for three reasons. First, if plaintiffs were permitted to swap defendants "would be allocating that privilege solely on the basis of religion, a practice *Hardison* specifically rejected." (Defendants Brief in Opposition to Plaintiff's Motion at p. 9). But the issue of voluntary swaps did not arise in *Hardison.*

Second, defendants argue that there is no provision for voluntary swaps in the collective bargaining agreement. Defendants ask, "would the union stand by while two of its members received benefits not allowed the rest?" *Id.* Defendants seem to imply that merely because the agreement has no provision for swaps, then swapping would violate the agreement. The court disagrees. Defendants have pointed to no provision of the bargaining agreement which precludes voluntary trade-offs of shift assignments.

Defendants seem to imply that the union's objection to voluntary swaps is enough to excuse them from trying it as a means of accommodation. But the union's "grumbling" about a "benefit" allowed to plaintiffs would not absolve defendants of their statutory duty to accommodate. *Anderson v. General Dynamics Convair, etc.,* 589 F.2d 397, 402 (9th Cir.1978). Moreover, defendants have offered no proof that any employees would object to other employees voluntarily giving up particular Friday and Saturday evenings so that plaintiffs could observe the sabbath. *See Draper v. United States Pipe & Foundry Co.,* 527 F.2d 515, 521 (6th Cir. 1976) (court rejected argument about employee grumbling because argument was based on speculation rather than evidence).

Third, defendants complain that they are not required to allow voluntary swaps, since such swaps would involve administrative costs of keeping track of plaintiffs' schedule changes, and may require that employees who swap with plaintiffs get paid overtime. Defendants offer no evidence of what the added administrative costs would be. In addition, because they have not allowed employees to voluntarily swap for any reason, they can only speculate about the need to pay overtime. In this court's view, an employer cannot escape its statutory burden by mere speculations about added costs. *Accord, Brown v. General Dynamics Corp.,* 601 F.2d 956, 961 (8th Cir.1979); *Anderson v. General Dynamics Convair Aerospace Division,* 589 F.2d 397, 402 (9th Cir.1978), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979).

The second alternative considered involved a schedule in which plaintiffs would work six days per week. This alternative was proposed by plaintiff Drazewski. It is not clear from the record why Mr. Drazewski made this suggestion, but apparently it was offered as a means by which he could make up the time off he would receive for his Sabbath by working more days than required by other workers. Defendants rejected this proposal because, under the terms of the collective bargaining agreement, work in excess of forty hours per week would require defendants to pay plaintiffs overtime for the excess hours. The court agrees that after *Hardison* an employer cannot be required to incur substantial overtime expenses in order to accommodate an employee's religious practices. But even here, defendants can only speculate as to the amount of overtime that would be necessary under this proposal.[2]

The third suggestion was to use a flexible schedule by which plaintiffs could work until sundown on Friday and then come in to work after sundown on Saturday. Defendants rejected this proposal because, they say, it would give plaintiffs a "special schedule" based on their religious beliefs, in contravention to the uniform scheduling provisions of the collective bargaining agreement, and the Supreme Court's hold-

---

2. While Mr. Drazewski suggested that he work six days per week, obviously that would not be necessary every week in order to allow him the sabbath off. The first and second shifts are designed to give the employee every third weekend off. At least as to these shifts, the employee would not need to work six days a week on the third week of the rotation since he would have the weekend off any way.

ing in *Hardison.* But this court has searched the collective bargaining agreement in vain for a provision which would preclude defendants from allowing plaintiffs to work a schedule different from other employees. As to the *Hardison* argument, the court cannot read that decision as broadly as defendants do. If *Hardison* means, as defendants argue, that an employer may never arrange a schedule to accommodate an employee's religious practices, then *Hardison* amounts to an emasculation of the statutory duty of accommodation. This court is reluctant to read *Hardison* in a way which contradicts the language of the statute. The Second Circuit too has noted the problem inherent in such a reading of *Hardison:*

> The school board also suggests that accommodating appellant would constitute preferential treatment. We disagree. While we acknowledge the cautionary language of *Hardison,* we do not interpret *Hardison* as vitiating the employer's duty to accommodate. Appellant's proposal for religious observance is not one seeking preferential treatment.... Appellant has asked to be treated differently; he has not asked for privileged treatment.... Differential treatment cannot be equated with privileged treatment. Accepting the school board's argument would preclude all forms of accommodation and defeat the very purpose behind § 2000e(j). *Brown,* 601 F.2d at 962.

*Philbrook v. Ansonia Bd. of Educ.,* 757 F.2d 476, 487 (2d Cir.1985), *cert. granted,* — U.S. —, 106 S.Ct. 848, 88 L.Ed.2d 889. Accordingly, the court rejects defendants' preferential treatment argument.

Finally, defendants considered and rejected a proposal that would allow plaintiffs to work only part-time. Defendants again argue that, because there was no provision for part-time employment in the collective bargaining agreement, allowing plaintiffs to work part-time would violate the agreement. This argument about violation of the bargaining agreement is no

more persuasive here than it was before. Moreover, the court notes that Section 10 of the agreement specifically allows for a four day week upon request by the employee, and a determination by the employer that its scheduling needs can be met if the request is approved. Defendants also argue that a four day week would preclude plaintiffs from working on weekends, when their services are most in demand. But that is not so obvious to the court. Plaintiffs' religious practices prevent them from working only from sundown Friday to sundown on Saturday. There is no reason that one of their four day shifts could not be from 11:30 p.m. Saturday to 6:45 a.m. Sunday, the third shift, or any of the three shifts on Sunday. It is obvious' that defendants have simply rejected this suggestion out-of-hand.

As their last reason for rejecting the part-time suggestion, defendants contend that there are no part-time positions available at Waukegan. They argue that *Hardison* does not require them to create positions where none exist. That much is true. But *Hardison,* like the statute it interprets, requires the employer to make reasonable accommodations. Defendants argument here is really premised on the same notion as are all their other arguments: so long as the scheduling system is "neutral," defendants need do nothing to accommodate the religious practices of their employees. That notion clearly flies in the face of § 2000e(j). In the context of religious beliefs, it is not enough that an employer has adopted certain practices which are facially neutral. As Justice Marshall has observed, "[t]he accommodation issue by definition arises only when a neutral rule of general applicability conflicts with the religious practices of a particular employee." *Hardison,* 432 U.S. at 63, 97 S.Ct. at 2264 (Marshall, J., dissenting). Moreover, the statute also "expressly assigns employers a duty to accommodate those beliefs," *Philbrook,* 757 F.2d at 483, unless to do so is unreasonable or results in an undue hardship on the employer.[3] The court

---

**3.** The court is aware of the possible constitu-    tional problems with the accommodation duty.

thinks that defendants have failed to meet their burden of showing that they cannot reasonably accommodate plaintiffs without undue hardship on the conduct of business at Waukegan. Defendants are therefore not entitled to summary judgment.

■ But plaintiffs are not entitled to summary judgment either. Plaintiffs seem to argue that, because defendants refused to accommodate them, and would not even consider a trial implementation of the accommodation proposals, defendants have not and cannot meet their burden. But it is obvious that while some of the proposals were rejected because defendants simply did not want to be bothered with accommodating plaintiffs, the issue here is whether these proposals (or any other reasonable ones) would result in undue hardship. That is a factual inquiry not resolvable on the incomplete factual record presently before the court.[4] As the Seventh Circuit noted:

> The term 'reasonable accommodation' is a relative term and cannot be given a hard and fast meaning. Each case involving such a determination necessarily depends upon the facts and circumstances of the individual employer-employee relationship. The trier of fact is in the best position to weigh these considerations.

*Redmond v. GAF Corp.*, 574 F.2d 897, 902–03 (7th Cir.1978). This is as true for "undue hardship" determinations as it is for "reasonable accommodation."

Commentators have suggested that the Supreme Court's conclusion in *Hardison* that, Title VII requires employers to incur no more than a *de minimus* cost in fullfilling the accommodation duty, may have been a result of the Court's concern that the accommodation duty, stretched to its logical limits, would run afoul of the First Amendment's Establishment Clause. *See e.g. Heaven Can Wait* at 853 & n. 116; Wheller, *Establishment Clause Neutrality and the Reasonable Accommodation Requirement*, Hastings Const. L.Q. 901, 928–931 (1977). For two reasons, this court will not address the constitutional problem. First, the parties have not raised the issue, and the court should not decide it in the absence of the parties' views. Second, the court doubts that the Establishment Clause question can be decided on the present factual

For the reasons discussed above, both plaintiffs' and defendants' motions for summary judgment are denied.

record. *See, Hardison*, 432 U.S. at 90, 97 S.Ct. at 2279 (Marshall, J. dissenting) (accommodation duty would perhaps violate Establishment Clause if employers were required to incur "substantial cost" in aiding the religious observer). As noted earlier, defendants have presented no evidence as to the cost of the various alternatives proposed by plaintiffs.

4. The court is, of course, aware that one reason the factual record is incomplete is that defendants never tried any of these proposals. But at trial defendants must be given the opportunity to come forward with evidence to show that their speculations are based on facts, not mere suppositions.