Bobby J. BENEFIELD, Plaintiff,

v.

FOOD GIANT, INC., Defendant.

Civ. A. No. 82–16–COL.

United States District Court,
M.D. Georgia,
Columbus Division.

Dec. 4, 1985.

Walter E. Carson, of Johns and Carson, Tacoma Park, Md., and Roger Bradley, Blue Ridge, Ga., for plaintiff.

Alexander E. Wilson, III and Forrest W. Hunter, of Jones, Bird & Howell, Atlanta, Ga.; for defendant.

## OPINION

ELLIOTT, District Judge.

In this case the Plaintiff, who is an employee of the Defendant, contends that the Defendant has discriminated against him in his employment because of his religious beliefs and he seeks to recover back pay and other benefits and attorney's fees. After evidentiary hearing the Court files this opinion in conformity with the requirements of the Federal Rules of Civil Procedure and the Court's findings of fact and conclusions of law are incorporated herein.

The parties have stipulated and the Court finds that it has jurisdiction over this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and 28 U.S.C. § 1343, and the Plaintiff is an individual within the class of individuals protected by the Act,

and he has complied with all statutory conditions prerequisite to the filing of this lawsuit.

■ The Defendant is an "employer" within the meaning of the Act, and where the Plaintiff in a religious discrimination action establishes that he has been adversely affected in his employment situation as a result of his religious beliefs it is the employer's burden to demonstrate that it is unable to reasonably accommodate to the employee's religious belief without undue hardship on the conduct of its business. The undue hardship which the employer must demonstrate under the law is no more than a *de minimis* burden. *Trans World Airlines v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977).

The Defendant is engaged in the operation of a chain of retail grocery stores in the States of Georgia and Alabama and operates four stores in the Columbus—Phenix City area. The Plaintiff was initially employed by the Defendant company at Store No. 139 in Columbus in 1972 and was subsequently promoted to the position of Produce Manager, the position which he held when the circumstances arose which led to this lawsuit.

In late 1975 Plaintiff became interested in the Seventh Day Adventist Church and became a member of that Church in January, 1976. A religious tenet of the Seventh Day Adventist Church is that no work should be performed on the sabbath, which, according to the Church's teaching, is from sunset Friday evening until sunset Saturday evening. By letter dated January 31, 1976, the Plaintiff notified the company and his union that effective Saturday, February 7, 1976, he would no longer be available to work on his sabbath.

The company's initial response to the Plaintiff's refusal to work on Saturday (from sundown Friday to sundown Saturday) was through its Store Manager, who informed him that he did not believe that the Plaintiff would be able to be off on Saturday. Shortly thereafter the Plaintiff was informed by the Store Manager and the District Supervisor of the Defendant that they would discuss the matter with the company's Vice-President in charge of personnel at the company headquarters in Atlanta and would get back to the Plaintiff with an answer. A meeting was held on February 20, 1976, with the Plaintiff, the District Supervisor, and the Vice President in charge of personnel, and a union representative, and at this meeting the company informed the Plaintiff that the company would permit him to be off on Saturday as an accommodation to his religious beliefs. The company stated that it would continue to schedule him for a 40 hour week, but would allow him to be absent without pay for that portion of the schedule which coincided with his sabbath. The Plaintiff at no time received any disciplinary action for being absent on Saturday nor was he paid for the period of absence. The company reassigned the Plaintiff to the position of Stock Clerk. The basis for this reassignment was the company's judgment that it could not have a person in the position of Produce Manager who was unavailable for work on Friday night or Saturday.

Following the changes above outlined the Plaintiff filed a grievance concerning the change and a meeting was held in April, 1976, between the company and union officials. The union elected not to pursue the grievance further. Thereafter the Plaintiff filed the charge with the Equal Employment Opportunity Commission, alleging discrimination on the basis of his religion. The charge was investigated by the Atlanta office of EEOC and was referred by that office to the Commission in Washington for recommended decision. On November 6, 1981, EEOC issued its Determination dismissing the Plaintiff's charge as being without reasonable evidence to support it. Since the EEOC had amended its Guidelines on Religious Discrimination in November, 1980, and since its Determination was made in November, 1981, this Determination by EEOC was presumably in conformity with the Guidelines which had been promulgated by that agency.

Within each of the Defendant's retail grocery stores there are three department

heads in the grocery part of the store—the Assistant Manager, Front End Manager and Produce Manager. These three positions are considered as management positions by the company, although they are included in the bargaining unit represented by the Retail Clerks Union. We have already noted that the Plaintiff held the position of Produce Manager when he notified the company that because of his religious beliefs he would not work on his sabbath.

The Produce Department in the Defendant's store is unique in that it contributes a higher percentage of the store's profit than it does percentage of sales. For this reason the Produce Department is considered a profit center by the company and the Produce Manager is responsible for the profitability of the department which he supervises. The sales emphasis attached by the company to the Produce Department is illustrated by the fact that the Produce Department is situated in the right front of the store and is the first merchandise area seen by customers who enter the store. It is, of course, well known that produce is perishable in nature, so an essential function of the person in charge of the Produce Department is to sell the produce before it deteriorates. The evidence shows that with respect to all produce the Produce Manager is in charge of ordering, displaying and rotating the product, reducing the product price where necessary to sell it, and spot ordering additional produce from local sources in instances of product shortage. Consistent with his responsibilities, the Produce Manager is the highest paid of the three department heads in the bargaining unit covered by the Retail Clerks Union contract.

The evidence in this case establishes that Saturday is the store's busiest day of the week in terms of sales volume by a substantial margin over any other day of the week. Similarly, Saturday is also the heaviest day of the week for the Produce Department. Friday night, which is a part of the sabbath during which the Plaintiff cannot work, is also a busy period in terms of sales, even busier than the corresponding period on Saturday night. This means that the religious beliefs of the Plaintiff prevent him from being present in the store during the significantly busiest times of the week in terms of volume of sales of the store as a whole and of the Produce Department. All of this was established by the testimony of the Industrial Engineering Manager of the Defendant, who supplied pertinent statistics regarding sales volume and store traffic.

All witnesses who testified were in agreement that it is traditional in the grocery store industry for the Produce Manager to work on Saturday. In fact, in the retail grocery industry all full-time employees are normally scheduled to work on Saturday because of the customer volume on that day, and the evidence shows that no full-time employee of the Defendant company has ever been scheduled on a regular basis to be off on Saturday.[1]

The three other stores operated by the Defendant in the Columbus—Phenix City area, although showing a larger sales volume, are staffed in manner similar to Store No. 139, and the Court finds as a matter of fact that during the period covered by this lawsuit there were no full-time employees of the Defendant in the Columbus—Phenix City area who were not regularly scheduled to work either Friday night or Saturday. Accordingly, the Court finds that there were no full-time employees with whom the Plaintiff could swap days off in order to enable the Plaintiff to schedule a regular 40 hour week. It is the best judgment of the company that to operate a Produce Department without the person who is responsible for the Department's profit being present on the busiest day of the week would create a hardship on the company

---

1. The only exception noted is that one frozen food clerk in Store No. 139 during a period of approximately two months in the current year 1985 worked a Monday through Friday schedule because of a change in the day of the week in which the store received its frozen food deliveries, however, that particular frozen food clerk has more seniority than the Plaintiff and thus is not subject to displacement by the Plaintiff.

and affect its store profitability because the Defendant presented testimony demonstrating that when a Produce Manager has been absent on a given Saturday the condition of the produce has noticeably deteriorated.

It is, of course, well known that the retail grocery industry is a highly competitive one and the evidence in this case demonstrates that the Defendant company is the only remaining unionized retail grocery chain operating in the Columbus—Phenix City area and the operations of the Defendant have been unprofitable for at least the last four years. In an attempt to improve this situation the company has made every effort to schedule employees in the most efficient way possible so as to reduce its labor costs, and the evidence shows that in order for the company to schedule the Plaintiff for 8 more hours during the Monday through Friday time frame (to make a total of 40 hours) the company would be paying the Plaintiff for 8 hours of work which would not have otherwise been performed. The effect would be to add the number of scheduled hours on the fifth day to the company's labor costs at Store No. 139.

During the course of the hearing in this matter counsel for the Plaintiff suggested that the company could have accommodated the Plaintiff's situation by allowing him to work on Sunday, so it is necessary that we give consideration to that contention. In the Columbus—Phenix City area grocery stores were traditionally closed on Sunday until about 1976, when they began opening on Sunday. When the Defendant began opening its stores on Sunday the Union insisted that Sunday work be voluntary, and in compliance with that insistence, that provision was written into the current union contract and work on Sunday is rotated on an equitable basis under the contract between employees who have volunteered to work on Sunday. The contract goes further and requires that those employees who work on Sunday be paid at time and one-half for all hours worked on Sunday. At the time this case first arose the required premium was double time.

The Court finds that if the company were required to schedule the Plaintiff on Sunday rather than Saturday it would be required by contract to incur an additional premium pay for such schedule. In addition, other employees who desired to work in equitable rotation on the premium pay day of Sunday would be deprived of such opportunities if the Plaintiff were regularly scheduled to work on Sunday. The evidence shows that in the last two contract negotiations the company has proposed to the Union that Sunday be included as a regularly scheduled work day at straight time pay, but the Union has refused to accede to the company's proposal. Since the union contract prohibits the employer from making an individual agreement with an employee which is contrary to the contract, the Court finds that the Plaintiff could not have been scheduled to work on Sunday without an undue hardship being created to the company and to other employees.

Since the Plaintiff began declining to work on Saturday his normal schedule has been a minimum of 32 hours, but the evidence shows that he has in fact worked a substantially greater number of hours per week. For example, in calendar year 1984, a typical year, he worked a total of approximately 2,000 hours and his earnings were in the approximate amount of $20,800.00, and he could have earned more if he had chosen to do so. This is true because since he is normally scheduled to work less than 40 hours per week he is considered to be a part-time employee under the union contract and the contract permits part-time employees to "claim" hours from other part-time employees on a seniority basis, except to the extent that such "claiming" of hours would result in another part-time employee working fewer than 12 hours per week. The evidence shows that this opportunity to claim hours has been available to the Plaintiff, but the Plaintiff has chosen not to claim hours under the union contract provision even though his hours of work would have increased had he done so.

The evidence also shows that the Plaintiff has suffered no reduction of group insurance benefits or pension entitlement as a result of his religious beliefs, and the Court finds as a fact that the Defendant through its Store Managers has endeavored in good faith to affirmatively schedule the Plaintiff for as many hours of work as the Store Managers could find for him outside of the prohibited sabbath hours. These efforts have included scheduling the Plaintiff on Saturday night after the sundown end of his sabbath.

The Court has reviewed the Guidelines promulgated by the EEOC on Discrimination Because of Religion which appear at 29 C.F.R. 1605, which suggest various methods by which an employer should attempt to accommodate the religious beliefs of an employee. The methods suggested by the Guidelines include voluntary shift swaps, flexible scheduling, and lateral transfers. It is the Court's view that the suggested methods of accommodation were not available to the employer in this case. This is true because since all employees are scheduled to work during the time when Plaintiff could not work by virtue of his religious beliefs no employees were available for voluntary shift swaps, and flexible scheduling could not change the fact that Plaintiff's services in the store were needed during the very hours when his religious beliefs would not permit him to work. The evidence shows that the Plaintiff did in fact receive lateral transfers from the position of Stock Clerk to that of Cashier, and subsequently to Produce Clerk, but the Saturday scheduling needs of all of these classifications were essentially the same. We have already noted that the Determination of EEOC dismissing the Plaintiff's charge on the merits was decided by the Commission after it had promulgated the Guidelines, so it was obviously the Commission's view that the Defendant was not in violation of the law with respect to its accommodation to the religious beliefs of the Plaintiff.

■ The Court concludes that the Defendant made reasonable accommodation to the Plaintiff's religious beliefs by permitting him to be absent during the sabbath work hours and by endeavoring to and in fact giving him as many hours as were available consistent with the store scheduling requirements. In addition to the Defendant's efforts to schedule Plaintiff for all available hours, the Plaintiff had the opportunity to "claim" additional hours under the union contract, a right which he intentionally chose not to assert. Also demonstrating reasonable accommodation by the Defendant is the fact that it permitted Plaintiff to transfer among various classifications within the store in order to maximize his earnings and best suit his desired working conditions.

■ The Court also concludes that it would constitute an undue hardship on the conduct of the Defendant's business to have continued the Plaintiff in the position of Produce Manager after he became unavailable for work on Friday night and Saturday, the Court accepting the Defendant's evidence that its many years experience in the retail grocery industry dictates the need for a management person to oversee the Produce Department during the busiest hours of the week and that other management employees in the store were fully occupied with their own duties and could not regularly add to their responsibilities those of overseeing the Produce Department.

■ The Court further concludes that it would be an undue hardship on the conduct of the Defendant's business for it to be required to schedule the Plaintiff for 40 hours of work outside of his sabbath hours because in order for Plaintiff to be scheduled on a 40 hour basis from Monday through Friday the Defendant would be required to pay the Plaintiff for work not needed, thereby adding unnecessarily to the Defendant's labor costs. Certainly an additional 8 hours pay per work week is more than a *de minimis* burden, and to schedule the Plaintiff for additional hours on Sunday would not only require the Defendant to incur a premium labor cost under the union contract, but would also de-

prive other bargaining unit employees of premium work opportunities.

Consistent with the foregoing, the Court determines that the Defendant has carried its burden of demonstrating that it has not discriminated against the Plaintiff on the basis of Plaintiff's religion in violation of Title VII of the Civil Rights Act of 1964, as amended. Accordingly, the Court directs that judgment be entered in favor of the Defendant, with costs to be assessed against the Plaintiff.