Thomas Harold LAKE,
Plaintiff–Appellee,

v.

**B.F. GOODRICH COMPANY,**
Defendant–Appellant.

**Nos. 86–7671, 86–7772.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 11, 1988.

Rehearing and Rehearing En Banc
Denied March 21, 1988.

Jefferson D. Kirby, III, Ford & Harrison, Paula A. Hilburn, Atlanta, Ga., for defendant-appellant.

Lee Boothby, Boothby, Ziprick & Yingst, Berrien Springs, Mich., Frank V. Potts, Potts & Young, Florence, Ala., for plaintiff-appellee.

Before HILL and VANCE, Circuit Judges, and PROPST *, District Judge.

VANCE, Circuit Judge:

In this Title VII case defendant B.F. Goodrich Company appeals the district court's finding that the company discriminated against its employee Thomas Lake on the basis of his religion. The district court found that appellant neither made a

---

\* Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama, sitting by designation.

good faith effort to accommodate plaintiff's religious beliefs nor proved it was unable to accommodate plaintiff without undue hardship.[1] In the course of making these findings, the district court stepped beyond its proper role under Title VII by making findings of fact concerning how appellant should operate its business. Although we must disapprove these findings, we affirm the judgment because the district court's essential findings of fact are not clearly erroneous.

## I.

Appellee Lake had been an instrument mechanic in appellant's tire plant for several years, when he was promoted to an electrical instrument maintenance foreman in 1979. In 1981 he joined the Seventh Day Adventist Church. The district court found that Lake's sincere beliefs as a member of the Seventh Day Adventist Church precluded him from working on his sabbath (sundown Friday to sundown Saturday) because "adherents of that faith cannot work during those hours without losing their good standing and endangering their immortal souls." At this time Lake worked the third shift from 3:00 p.m. to 11:00 p.m., meaning that he was scheduled to work for part of his sabbath.

Those are all the undisputed facts. The rest of the case revolves around events the parties describe quite differently and to which the parties ascribe very different significance. For example, in February,

1982 appellant transferred Lake to the first shift, which enabled him to avoid working regular shifts during his sabbath. Appellant claims that this was a move to accommodate Lake's religious beliefs, while Lake claims that the transfer occurred accidentally and for reasons wholly unconnected to accommodating his religious beliefs.

In 1983 appellant, responding to an increase in the demand for tires, commenced intermittent full production on weekends. Appellant began to schedule Lake and the other electrical foremen for a seven day work week. The two other electrical foremen worked twelve hour shifts several Saturdays to cover for ·Lake.[2] In May and July there were meetings between Lake and various management officials to discuss solutions to the problems caused by Lake's inability to work Friday nights or Saturdays.[3] Finally, on Saturday, July 23 four hours of Lake's shift went uncovered.[4] At a meeting on July 26 the personnel director terminated Lake.

## II.

Title VII requires that an employer "make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 75, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113 (1977); *see Ansonia Bd. of Educ. v. Philbrook,* — U.S. —, 107 S.Ct. 367, 369 & n. 1, 93 L.Ed.2d 305 (1986); 42 U.S.C. § 2000e(j).[5] The statutory language

---

1. There is no dispute that Lake's religious beliefs were sincere, and that he established a *prima facie* case of discrimination.

2. Lake was an electrical instrument foreman who worked in Area III of the plant, the curing room, along with a janitor foreman and a mechanical foreman. It is factually disputed whether foremen from another department can cover for an electrical foreman, or whether a shift can operate with less than all craft foremen present. Appellee asserts that these kinds of accommodations are not unusual and have occurred in the past without incident. Appellant asserts that having an electrical foreman on each shift is critical to the efficiency and safety of the plant.

3. There is a factual dispute surrounding these meetings. Appellant cites to the number of

these meetings as evidence of its efforts to accommodate appellee. Appellee cites to the content of these meetings as evidence of appellant's failure to accommodate appellee.

4. The facts surrounding why the shift went uncovered are vigorously disputed. Appellant's version is that appellee had been attempting to get a maintenance foreman from Area II to cover on July 23, but failed to follow through with the final arrangements. Appellee's version is that appellee did everything he possibly could, and that appellant had sufficient advance notice that several hours of the Friday night shift were uncovered. The district court credited appellee's version of these events.

5. 42 U.S.C. § 2000e(j) provides:
    The term "religion" includes all aspects of religious observance and practice, as well as

does not make clear the precise reach of this obligation. *Hardison*, 432 U.S. at 75–76, 97 S.Ct. at 2272; *see Philbrook*, —— U.S. at ——, 107 S.Ct. at 371–73. The Supreme Court, however, has held that to require an employer to bear greater than a *de minimis* cost in accommodating an employee's religious beliefs constitutes undue hardship. *Philbrook*, —— U.S. at ——, 107 S.Ct. at 371; *Hardison*, 432 U.S. at 84, 97 S.Ct. at 2276–77; *see Wisner v. Truck Central*, 784 F.2d 1571, 1573 (11th Cir.1986); *Benefield v. Food Giant, Inc.*, 630 F.Supp. 78, 79 (M.D.Ga.1985), *aff'd*, 792 F.2d 1125 (11th Cir.1986); *Murphy v. Edge Memorial Hosp.*, 550 F.Supp. 1185, 1187–88 (M.D.Ala. 1982).

■ Our inquiry in this case is whether the district court's factual findings are clearly erroneous. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 580, 105 S.Ct. 1504, 1511, 1515, 84 L.Ed.2d 518 (1985); *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1129 (11th Cir.1984). In Title VII cases the district court's findings on discrimination may not be reversed unless the court of appeals concludes that the findings are clearly erroneous. *Anderson*, 470 U.S. at 573–74, 105 S.Ct. at 1511; *Pullman–Standard v. Swint*, 456 U.S. 273, 290, 102 S.Ct. 1781, 1791, 72 L.Ed. 2d 66 (1982). In particular "[t]he findings of undue hardship and more than de minimus cost are to be upset only if they are clearly erroneous." *Wisner*, 784 F.2d at 1573; *see Turpen v. Missouri–Kansas–Texas R.R. Co.*, 736 F.2d 1022, 1026 (5th Cir.1984); *Brener v. Diagnostic Center Hosp.*, 671 F.2d 141, 146 (5th Cir.1982).

■ On appeal appellant argues that it initially made an effort to accommodate Lake's religious observances by transferring Lake to the first shift when the first available vacancy occurred. Appellant contends that its other accommodation actions included scheduling other foremen for "maintenance days"[6] and excusing Lake from covering for absent foremen whenever the additional hours would require Lake to work on his sabbath. Appellant states that it arranged for other electrical foremen to replace Lake on certain production Saturdays. Finally, appellant points out that the company attempted to operate the plant without an electrical foreman on weekend production days prior to Lake's termination, but this caused numerous production problems. Lake, on the other hand, argues that after his initial objection to a production shift schedule requiring him to work on his sabbath, appellant indicated that Lake was to arrange for someone to cover his scheduled shifts. As a result Lake believed that appellant "was willing to do nothing at all to accommodate him."

While the evidence in this case is controverted, the district court found that appellant "made no real effort, certainly not a good faith effort, to find an accommodation" for appellee.[7] The court reasoned that appellant apparently failed to understand that the company had the burden to accommodate Lake's religious observances because appellant ultimately made Lake responsible for arranging replacements. The district court also explicitly found that appellant could have accommodated Lake's religious beliefs without undue hardship.[8]

---

belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

6. Appellant periodically scheduled "maintenance days" to repair and maintain its equipment. "Maintenance days" typically were scheduled for Saturdays because the maintenance work would not interfere with production.

7. The district court added:

[T]his court finds from the evidence that there was a distinct lack of sympathy for Mr. Lake's religious view and that the company did not make a good faith effort to accommodate that view. The company had a "don't care" attitude.

8. Some courts have broken down the analysis explicitly into (1) whether the employer made good faith efforts to find an accommodation, and (2) whether the employer proved that the efforts were unsuccessful because of undue hardship. *See, e.g., Getz v. Pennsylvania Dep't of Pub. Welfare*, 802 F.2d 72, 73 (3rd Cir.1986); *Proctor v. Consol. Freightways Corp. of Delaware*, 795 F.2d 1472, 1475 (9th Cir.1986). We

These findings are not clearly erroneous. In *Anderson*, the Supreme Court explained:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.
>
> . . . .
>
> Based on our own reading of the record, we cannot say that either interpretation of the facts is illogical or implausible. Each has support in inferences that may be drawn from the facts in the record; and if either interpretation had been drawn by a district court on the record before us, we would not be inclined to find it clearly erroneous.

470 U.S. at 574–77, 105 S.Ct. at 1511–13. We find ourselves precisely in this situation on this appeal. Counsel for both sides have presented the facts in the light most favorable to their respective clients. The district court, however, resolved the factual conflict in favor of Lake. As the Third Circuit noted in a similar case: "[A]lthough we are inclined to believe the hardship question was considerably closer than the district court did, we cannot say that its factual determinations, based on its assessment of the witnesses' credibility and its familiarity with the evidence, are clearly erroneous." *Protos v. Volkswagen of Am., Inc.*, 797 F.2d 129, 135 (3rd Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986). We therefore affirm the district court's judgment on the basis of these findings.

The district court made additional findings of fact concerning how appellant should have conducted its business affairs. Commenting on the overtime hours of the tire plant foremen, the district court wrote in its memorandum opinion:

> The court has heard the evidence . . . and finds that to work so many hours in a

week not only was dangerous from a safety standpoint, but was extremely inefficient use of the persons involved. They simply could not function well working a 12–hour day with no days off. To the court's mind, to exploit men this way is unthinkable, certainly unreasonable. For the company's own benefit, it should have trained substitute or temporary or weekend foremen. Almost any other plant in our industrial nation would have been operated with substitutes for foremen who had to be off. Almost any other plant in this nation would have had trained men ready to step in when needed. Not this defendant. This defendant claims undue hardship in accommodating this plaintiff's religious belief, but if it had simply acted in its own interest and had trained men ready to substitute, the accommodation would have been simplicity itself.

■ We agree with appellant that Title VII does not require an employer to operate its business in a manner the district court considers safe and efficient. *Cf. Hardison*, 432 U.S. at 84–85, 97 S.Ct. at 2276–77 (disapproving of requiring an employer to finance additional days off for employees with certain religious beliefs); *Wisner*, 784 F.2d at 1574 (employer can adjust its operations as it deems appropriate to make up for the services of a discharged employee without incurring liability for a Title VII violation). We therefore disapprove of these extraneous findings.

■ The district court, however, made the minimum requisite findings for imposing Title VII liability and these findings are not clearly erroneous. We therefore ignore the surplusage in the district court's opinion and affirm its judgment.

AFFIRMED.

HILL, Circuit Judge, dissenting:

Appellee's religious beliefs prevented him from working Friday evenings and Saturdays, although his position frequently called for such work. Upon learning of this restriction, appellant did not terminate

---

note that the district court found that appellant

failed to prove both.

the appellee, but instead attempted to accommodate him through the following actions:

(1) Attempting to arrange a transfer for appellee to the first shift to relieve him from working Friday evenings after sundown;

(2) Transferring appellee to the first available vacancy on the first shift, thereby allowing him to work a full week without Friday evening or Saturday work;

(3) Excepting appellee from work on Saturday "maintenance" days during 1982 and 1983, although the maintenance department worked at least 49 Saturdays during that period;

(4) Excepting appellee from work on production Saturdays during the first three and one-half months of 1983 when production weekends began;

(5) Arranging alternative coverage or operating without an electrical instrument foreman for four hours on Friday evenings so that appellee would not have to work;

(6) Excusing appellee from covering a portion of a vacationing foreman's shift, although such coverage is normally required;

(7) Scheduling other foremen to work twelve hour shifts and paying them premium wages to cover for appellee on Fridays and Saturdays;

(8) Operating appellee's shift without a foreman resulting in decreased production and efficiency;

(9) Advising appellee that it was willing to consider any reasonable alternatives he could propose;

(10) Allowing appellee to obtain replacements for himself to cover portions of his shift;

(11) Holding several meetings among managers and supervisors to discuss potential methods of accommodation.

Immediately prior to his termination, appellee assured his employer that he would work with his fellow foremen to arrange coverage for his shifts. Appellant agreed to this further accommodation. On Saturday, July 23, 1983, appellee failed to find a substitute for half of his shift, failed to show up for work, and failed to inform appellant that half of his shift would not be covered. Only then was appellee terminated.

Under *Ansonia Bd. of Educ. v. Philbrook*, — U.S. —, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986), when an employer offers a reasonable accommodation of an employee's religious beliefs, the employer satisfies its duty and is not required to consider every available alternative. Thus, so long as the above-described actions constituted reasonable accommodation, the district court's enumeration of its own list of alternatives was irrelevant.

I believe that the above-described efforts clearly constituted a reasonable accommodation and that the district court's finding to the contrary was clearly erroneous. I would reverse, and therefore I respectfully dissent from the majority's opinion.